**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THE ESTATE OF ANTHONY BARRÉ AND HIS SOLE HEIR, ANGEL BARRÉ** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-1057** |
| **BEYONCÉ KNOWLES CARTER, et al.** | **SECTION: "G" (5)** |

## ORDER

In this litigation, the Estate of Anthony Barré and Angel Barré (collectively, "Plaintiffs"), allege that the writers, performers, producers, record labels, distributors, and publishers who produced the song "Formation," the album "Lemonade," and the "Formation World Tour" used the actual voice and copyrighted works of Anthony Barré without authorization or compensation.[1] Pending before the Court is Defendants Beyoncé Knowles Carter ("Carter"), Parkwood Entertainment, LLC, Sony Music Entertainment, Michael L. Williams III, Khalif Brown, Asheton Hogan, Eardrummers Entertainment, LLC, Eardrummers Music Publishing, LLC, Oakland 13 Music, Warner-Tamerlane Corporation, Warner-Tamerlane Publishing Corp., Pretty Bird Pictures, Inc., Melina Matsoukas, and Aspiro AB's (collectively, "Defendants") "Motion to Dismiss for Failure to State a Claim."[2] Having considered the motion, the memoranda in support and opposition, and the applicable law, the Court will grant Defendants' motion to the extent that it seeks dismissal of Plaintiffs' unjust enrichment claim, as there are other remedies available at law to Plaintiffs such that Louisiana law precludes an unjust enrichment claim here, and deny

---

[1] Rec. Doc. 2 at 1–2.

[2] Rec. Doc. 51.

1

Defendants' motion as to the extent that it seeks dismissal of Plaintiffs' copyright infringement claims on fair use grounds, Plaintiffs' false endorsement claim under the Lanham Act, and Plaintiffs' LUTPA claim.

## I. Background

### A.    Factual Background

In this litigation, Plaintiffs allege that they own a protectable copyright interest in two YouTube videos created by Anthony Barré, also known as "Messy Mya:" (1) "Booking the Hoes from New Wildings;" and (2) "A 27 Piece Huh?"[3] According to Plaintiffs, Anthony Barré was a well-known performance comedian and music artist in New Orleans who published more than a hundred videos of his performances, receiving over two million views on YouTube.[4] Plaintiffs further allege that Anthony Barré produced or was featured in numerous songs with other famous local artists, such as Freddie Ross ("Big Freedia") and Magnolia Shorty.[5] Plaintiffs argue that Anthony Barré's voice was a unique instrument and inextricably linked to his performance art.[6]

Plaintiffs aver that Anthony Barré created "Booking the Hoes from New Wildings" in New Orleans on August 19, 2010, and published the work on YouTube the same day.[7] Plaintiffs point out that that the video includes Anthony Barré saying, "What happened at the New Orleans," which Plaintiffs allege was misappropriated and infringed by Defendants.[8] Plaintiffs also state that

---

[3] Rec. Doc. 2 at 3, 12.

[4] *Id.* at 12.

[5] *Id.*

[6] *Id.* at 13.

[7] *Id.*

[8] *Id.*

Anthony Barré created "A 27 Piece Huh?" in New Orleans on September 3, 2010, and published that work the same day.[9] According to Plaintiffs, that video features Anthony Barré saying, "Oh yeah baby. I like that" and "Bitch I'm back by popular demand," which Plaintiffs allege was misappropriated and infringed by Defendants as well.[10]

Plaintiffs aver that Anthony Barré was murdered on November 10, 2010.[11] Plaintiffs contend that Angel Barré, Anthony Barré's sister and sole heir, was appointed as the Independent Administrator of the Estate of Anthony Barré.[12] Plaintiffs assert that on April 25, 2016, Plaintiffs applied for and received copyright registrations for both YouTube videos as "works of performance art."[13]

Plaintiffs assert that Defendants released the single song "Formation" on February 6, 2016, in which the voice of Anthony Barré is featured saying three phrases from Anthony Barré's works, *i.e.* "What happened at the New Orleans," "Bitch I'm back, by popular demand," and "Oh yeah baby. I like that."[14] Plaintiffs further state that "Formation" was included on the album "Lemonade," which was released on April 23, 2016.[15] Plaintiffs also argue that Anthony Barré's voice, performance, and words were used and exploited by Defendants during the "Formation World Tour."[16] For example, Plaintiffs allege that Anthony Barré's voice is heard saying, "Oh

---

[9] *Id.*

[10] *Id.* at 13–14, 18.

[11] *Id.* at 13.

[12] *Id.* at 14.

[13] *Id.*

[14] *Id.* at 15, 19.

[15] *Id.* at 16–17.

[16] *Id.* at 18.

yeah baby, I like that" during the introductory performance of "Formation,"  and that Defendants utilized other performers, such as Big Freedia, to imitate Anthony Barré's voice and cadence in saying, "Bitch I'm Back by Popular Demand" before Carter appeared onstage.[17]

Plaintiffs point out that "Formation" was initially released exclusively via the "Tidal" music distribution service, which allegedly resulted in Defendants receiving more than a million new subscribers paying $12.99 per month.[18] Plaintiffs also allege that Defendants sold more than 543,000 copies of "Formation" in the United States, and that some or all of those sales included Plaintiffs' intellectual property.[19] Moreover, Plaintiffs contend that Defendants' "Formation World Tour," during which the infringing works were allegedly performed, resulted in sales of more than two million tickets and revenues of more than $250 million.[20] Additionally, Plaintiffs argue that Anthony Barré's voice, words, and performance from "A 27 Piece Huh?" were used and exploited during the "Formation World Tour" to provide a false and unauthorized endorsement of Carter and the "Formation World Tour."[21]

Plaintiffs argue that Anthony Barré's voice set the tone, mood, setting, and location for "Formation."[22] However, Plaintiffs aver that Defendants failed to secure any license or offer compensation to copy and exploit Anthony Barré's two works.[23] Plaintiffs further contend that

---

[17] *Id.*

[18] *Id.* at 16–17.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 18.

[22] *Id.* at 19.

[23] *Id.* at 21–22.

Anthony Barré's voice, words, and performance were used and exploited by Defendants to provide a false and unauthorized endorsement of "Formation" and the "Formation World Tour" that created consumer confusion as to Anthony Barré's and Plaintiffs' involvement with Defendants' works.[24]  According to Plaintiffs, Defendants are liable for $20 million in damages for copyright infringement under the Copyright Act, false endorsements under the Lanham Act, violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), and unjust enrichment under Louisiana law.[25]

## B.    *Procedural History*

Plaintiffs filed a complaint in this Court on February 6, 2017.[26] On February 7, 2017, Plaintiffs filed an amended complaint.[27] On March 10, 2017, and March 31, 2017, the Court granted Defendants' motions for extensions of time to answer Plaintiffs' complaint.[28] On April 14, 2017, Defendants filed the instant motion to dismiss.[29] On April 28, 2017, the Court granted Plaintiffs' motion to continue the submission date on the instant motion, and set the motion for submission on June 7, 2017.[30] On May 19, 2017, Plaintiffs filed an opposition.[31] On June 5, 2017,

---

[24] *Id.* at 18.

[25] *Id.* at 29, 32–33.

[26] Rec. Doc. 1.

[27] Rec. Doc. 2.

[28] Rec. Docs. 42, 43, 46.

[29] Rec. Docs. 50. The motions were originally filed by Defendants Beyoncé Knowles Carter, Parkwood Entertainment, Sony Music Entertainment, Michael L. Williams III, Khalif Brown, Asheton Hogan, Eardrummers Entertainment, Eardrummers Music Publishing, Oakland 13 Music, Warner-Tamerlane Publishing Corp., WB Music Corporation, Pretty Bird Pictures, and Melina Matsoukas. *See* Rec. Doc. 50-1. On April 20, 2017, the Court granted Defendant Aspiro AB's motion to join in the two instant motions. Rec. Doc. 68.

[30] Rec. Doc. 71.

[31] Rec. Doc. 73.

with leave of Court, Defendants filed a reply.[32] On June 12, 2017, with leave of Court, Plaintiffs filed a sur-reply.[33] On June 20, 2017, Defendants filed a "Notice of Supplemental Authority in Support of Motion to Dismiss."[34] On June 21, 2017, Plaintiffs filed a response to Defendants' notice of supplemental authority.[35]

On May 30, 2017, the Court granted Plaintiffs' request for oral argument on Defendants' instant motion to dismiss and Defendants' motion to strike, and set the motions for oral argument on June 7, 2017, at 10:00 a.m.[36] On June 6, 2017, Defendants filed a motion to continue oral argument to June 21, 2017.[37] However, because the Court determined it had sufficient information to decide the motions without oral argument, and because the parties' proposed date of June 21, 2017, conflicted with a jury trial that was expected to move forward, the Court cancelled oral argument in lieu of continuing it.[38]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion to Dismiss*

In their motion to dismiss, Defendants concede that the "Formation" music video and the live performances during the "Formation World Tour" include approximately ten seconds of audio from two of Anthony Barré's YouTube videos.[39] In particular, Defendants aver that the music

---

[32] Rec. Doc. 85.

[33] Rec. Doc. 90.

[34] Rec. Docs. 91, 95.

[35] Rec. Doc. 93.

[36] Rec. Doc. 76.

[37] Rec. Doc. 81.

[38] Rec. Doc. 82.

[39] Rec. Doc. 50-1 at 2.

video uses four seconds of audio from Anthony Barré's five minute and fourteen second YouTube video titled "Booking the Hoes from New Wildings."[40] Defendants also state that the music video uses approximately six seconds of audio of Anthony Barré from the one minute and fifty-three second YouTube video titled "A 27 Piece Huh?"[41]

### 1.    Dismissal of certain Defendants involved in the production of the "Formation" single and the Super Bowl Half-Time show

However, Defendants argue that Anthony Barré's YouTube videos were not used in the sound recording and composition of the single "Formation" or during the Super Bowl Half-Time show.[42] Therefore, Defendants argue that all Defendants who were solely involved in producing the sound recording and composition of "Formation" or the Super Bowl Half-Time show should be dismissed with prejudice.[43] Defendants point out that the Court may consider the source material itself on this motion to dismiss, as all of the works were referred to and incorporated by reference into Plaintiffs' complaint.[44] Defendants contend that courts "routinely consider" such works at the pleading stage in copyright and trademark actions.[45] Defendants further inform the

---

[40] *Id.* at 4–5.

[41] *Id.* at 5.

[42] *Id.* at 2, 4.

[43] *Id.* at 2, 6–7, 24. In particular, Defendants request that the following Defendants, who Plaintiffs did not allege had any involvement in the music video or live performances, be dismissed with prejudice: (1) Parkwood Entertainment; (2) Michael L. Williams; (3) Khalif Brown; (4) Asheton Hogan; (5) WB Music Corporation; (6) Warner-Tamerlane Publishing Corp.; (7) Eardrummers Music Publishing; and (8) Oakland 13 Music. *Id.* at 24–25.

[44] *Id.* at 2, 6–7 (citing *Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004)).

[45] *Id.* at 7 (citing *Caner v. Smathers*, 2014 WL 12580461, at *4 (N.D. Tex. 2014); *Faulkner Literary Rights v. Sony Pictures*, 953 F. Supp. 2d 701, 705 n.2, 712 (N.D. Miss. 2013); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*, 868 F. Supp. 2d 172,183 (S.D.N.Y. 2012); *Randolph v. Dimension Films*, 630 F. Supp. 2d 741, 744 (S.D. Tex. 2009), *aff'd*, 381 Fed. App'x. 449 (5th Cir. 2010); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 974 (C.D. Cal. 2007)).

Court that, while beyond the scope of a motion to dismiss, Defendant Pretty Bird also received a license from Anthony Barré's family to use his works.[46]

### 2. Dismissal of Plaintiffs' copyright infringement claims under the fair use doctrine

Defendants argue that even in the absence of a license, Defendants' use of small clips of Anthony Barré's YouTube videos in Defendants' music video and live performances is protected by the fair use doctrine.[47] According to Defendants, pursuant to Section 107 of the Copyright Act, the fair use doctrine creates a "privilege to use copyrighted material in a reasonable manner without the consent of the copyright owner."[48] Defendants represent that courts consider four non-exclusive factors when determining whether the use of a copyrighted work is "fair use:" (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;" (2) "the nature of the copyrighted work;" (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole;" and (4) "the effect of the use upon the potential market for or value of the copyrighted work."[49]

### i. First fair use factor: the purpose and character of the use

Defendants argue that the Supreme Court has held that the first fair use factor is used to determine "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."[50] In other words, Defendants aver, courts look to whether the

---

[46] *Id.* at 2.

[47] *Id.* at 2, 8.

[48] *Id.* at 8 (citing *Lewis Galoob Toys v. Nintendo*, 964 F.2d 965, 969 (9th Cir. 1992)).

[49] *Id.* (quoting 107 U.S.C. § 107).

[50] *Id.* at 9 (quoting *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 579 (1994); *Brownmark Films v. Comedy*

new work is "transformative," which the Supreme Court has determined is "the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright."[51] Defendants further argue that transformative works include "those that are used for a wholly different purpose than the original."[52] Defendants point to *Cariou v. Prince*, where the Second Circuit determined that an artist who had altered the plaintiff's photographs of Rastafarians from the plaintiff's book were transformative, as they "have a different character, give Cariou's photographs a new expression, and employ new aesthetics with creative and communicative results distinct from Cariou's."[53] Defendants further assert that in *Seltzer v. Green Day*, the Ninth Circuit held that Green Day's use of a "slightly modified version of the plaintiff's illustration of a screaming face throughout a four-minute video" as a backdrop during a performance of a song about "the violence that is done in the name of religion" was protected under the fair use doctrine, as the plaintiff's copyrighted work was used as "raw material" to create something different.[54]

Here, Defendants argue that certain Defendants used audio from Anthony Barré's YouTube videos as "raw material" in the creation of a music video about "black Southern resilience that featured depictions of the history and culture of New Orleans." [55] Defendants allege that the YouTube videos were "only a component" of the music video and live performances,[56]

---

*Partners*, 682 F.3d 687, 693 (7th Cir. 2012)).

[51] *Id.* (citing *Campbell*, 510 U.S. at 579).

[52] *Id.* at 10.

[53] *Id.* at 9 (citing *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013)).

[54] *Id.* (quoting *Seltzer v. Green Day*, 725 F.3d 1170, 1173–74 (9th Cir. 2013)).

[55] *Id.* at 2–3, 10.

[56] *Id.* at 11.

and that Defendants' works "employed new aesthetics with creative and communicative results distinct from" Anthony Barré's YouTube videos.[57]  Moreover, Defendants assert that the small clips of the YouTube videos were used for an entirely different purpose than the originals.[58] According to Defendants, in his YouTube videos, Anthony Barré "speaks stream-of-consciousness to the camera as he walks the streets of New Orleans, in one video criticizing several woman he knew, and in the other complimenting a woman's hair."[59] By contrast, Defendants contend, they used the short audio clips for a "highly transformative use" to, as Plaintiffs alleged in their complaint, "create the tone, mood, setting and location of the New Orleans-themed 'Formation.'"[60]

### ii.    *Second fair use factor: the nature of the copyrighted work*

Next, Defendants aver that the second factor requires courts to evaluate "whether or not a work is published," as the scope of fair use "is narrower with respect to unpublished works."[61] Here, Defendants argue that this factor weighs in favor of a finding of fair use, as it is undisputed that Anthony Barré published his YouTube videos in 2010 prior to Defendants' use of the videos.[62]

### iii.    *Third fair use factor: substantiality of the use*

According to Defendants, the third factor "asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole are reasonable in relation to the

---

[57] *Id.*

[58] *Id.* at 11.

[59] *Id.*

[60] *Id.* (citing Rec. Doc. 2 at 1).

[61] *Id.* (citing *Arica Inst. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992); *Swatch*, 756 F.3d at 87, 89; *Seltzer*, 725 F.3d at 1178).

[62] *Id.* at 12.

purpose of the copying."[63] Therefore, Defendants argue that an allegedly infringing work that captures little of the original work is likely to be a fair use.[64] For example, Defendants point out that in *SOFA Entertainment v. Dodger Products*, the Ninth Circuit determined that the use of a seven second clip from *The Ed Sullivan Show* in a musical about The Four Seasons was quantitatively and qualitatively insignificant, and that Ed Sullivan's "charismatic personality" was not copyrightable.[65] Here, Defendants aver that the music video used only four seconds of a five minute and fourteen second clip and six seconds of a one minute and fifty three second clip, while the live performances used only the six second audio clip.[66] Thus, Defendants argue that the third factor weighs strongly in favor of fair use in light of the "insignificant amount of the YouTube Videos" used.[67]

### iv. Fourth fair use factor: the effect on the market

Finally, Defendants state that the fourth factor asks courts to weigh "the effect of the secondary use upon the potential market for the value of the copyrighted work."[68] Defendants assert that the focus is on whether the secondary use "usurps the market of the original work."[69] According to Defendants, in *Cariou*, the Second Circuit held that there was no effect on the potential market for the plaintiff's photographs of Rastafarians as the plaintiff "has not actively marketed his work or sold his work for significant sums, and nothing in the record suggests that

---

[63] *Id.* (quoting *Campbell*, 510 U.S. at 586).

[64] *Id.* (citing *Seltzer*, 725 F.3d at 1178).

[65] *Id.* (quoting *SOFA Entm't v. Dodger Prods.*, 709 F.3d 1273, 1278 (9th Cir. 2013)).

[66] *Id.* at 13.

[67] *Id.*

[68] *Id.* (citing *Cariou*, 714 F.3d at 708).

[69] *Id.* (quoting *Blanch*, 467 F.3d at 258).

anyone will not now purchase Cariou's work."[70] Defendants argue that Plaintiffs here have not established that the use of ten seconds of audio from YouTube videos will usurp the market for Plaintiffs' works, "if any such market exists."[71] Defendants point out that Plaintiffs fail to make any factual allegations that Anthony Barré sold or licensed any of his videos or that Defendants' use somehow harmed the value of Plaintiffs' works.[72] Rather, Defendants contend that Defendants' use of the works "helped (or perhaps even created) that market" for Anthony Barré's works.[73] In sum, Defendants argue that all four favors weigh in favor of a finding of fair use.[74]

### 3.    Dismissal of Plaintiffs' false endorsement claim

Furthermore, Defendants argue that Plaintiffs are attempting to improperly assert claims that extend beyond the applicable realm of copyright law.[75] Defendants contend that Plaintiffs' false endorsement claim fails because the Lanham Act is only intended to protect consumers from confusion, and "not to provide a backdoor to claims for the use of a copyrighted work."[76] Moreover, Defendants assert that courts have "uniformly rejected" the argument that the "mere use of a copyrighted work implies an affiliation with the creator or subject of that work."[77] Defendants also argue that there is no precedent for allowing a performer to assert trademark rights

---

[70] *Id.* (quoting *Cariou*, 714 F.3d at 709).

[71] *Id.*

[72] *Id.*

[73] *Id.* at 14.

[74] *Id.*

[75] *Id.* at 3.

[76] *Id.*

[77] *Id.* at 15 (citing *Oliveira v. Frito-Lay*, 251 F.3d 56, 62 (2d Cir. 2001); *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1167–68 (C.D. Cal. 2010)).

in a performance.[78] For example, Defendants point out that in *Oliveira v. Frito-Lay*, the Second Circuit rejected the argument that a television commercial's use of a song performed by a particular artist constitutes false endorsement, as the court noted that "artists who could assert claims similar to [plaintiff's] would bring suit against entities that had paid bona fide license fees to all known holders of rights."[79] Additionally, Defendants contend that the Supreme Court has expressly refused to recognize a perpetual right in copyrighted works in the public domain that Plaintiffs are allegedly seeking under the Lanham Act.[80]

Second, Defendants assert that even if the use of a copyrighted work could be recognized as an endorsement under the Lanham Act, the First Amendment to the United States Constitution protects Defendants' artistic expression and precludes Plaintiffs' false endorsement claim.[81] According to Defendants, in *Rogers v. Grimaldi*, the Second Circuit considered whether the "iconic entertainer" Ginger Rogers could bring a false endorsement claim against the producers of the film *Ginger and Fred*, which alluded to Ginger Rogers in the title but was primarily about fictional cabaret performers.[82] Defendants assert that the Second Circuit recognized that the First Amendment limits the Lanham Act when artistic expression is involved, and determined that the Lanham Act does not apply to allegedly misleading titles of artistic works "unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless

---

[78] *Id.*

[79] *Id.* (citing *Oliveira*, 251 F.3d at 59, 63).

[80] *Id.* at 16 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)).

[81] *Id.*

[82] *Id.* at 17 (citing *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)).

the title explicitly misleads as to the source of the content of the work."[83] Defendants aver that the *Rogers* test has been adopted by the Fifth Circuit.[84] Defendants state that while the Fifth Circuit has not yet considered whether the *Rogers* test extends beyond claims of false endorsement for titles of artistic works, "almost every court to consider the issue has done so."[85]

### a.    First **Rogers** *factor: the artistic relevance of Anthony Barré's voice to Defendants' works*

According to Defendants, the first prong of the *Rogers* test is satisfied "if the alleged mark has *any* artistic relevance to the underlying work."[86] Here, Defendants argue that Plaintiffs' alleged marks clearly have artistic relevance to Defendants' works.[87] Defendants point out that Plaintiffs alleged in their complaint that Anthony Barré's YouTube videos were used to create the "tone, mood, setting and location" of "Formation," and that Plaintiffs alleged that Anthony Barré's "voice and words . . . reach the very essence of 'Formation' and are crucial to 'Formation.'"[88] Therefore, Defendants contend that "there cannot be any dispute" that Anthony Barré's voice has artistic relevance to the music video and live performances.[89]

---

[83] *Id.*

[84] *Id.* (citing *Westchester Media v. PRL USA Holdings*, 214 F.3d 658, 664 (5th Cir. 2000)).

[85] *Id.*

[86] *Id.* at 18 (citing *Rogers*, 875 F.2d at 999; *E.S.S. Entm't 2000 v. Rock Star Videos*, 547 F.3d 1095, 1099 (9th Cir. 2008) (considering whether the "level of relevance" of an "alleged mark to the work" is merely "above zero")).

[87] *Id* at 18–19.

[88] *Id.* at 19.

[89] *Id.*

b.    *Second* **Rogers** *factor: expressly misleading*

Next, Defendants argue that they did not expressly mislead as to the source of the content of the work at issue.[90] According to Defendants, to "expressly mislead" means they must have made an "overt claim" or an "explicit indication" that Anthony Barré endorsed or was involved with the work.[91] Defendants aver that courts have made clear that the "mere use of the mark itself," such as Anthony Barré's voice, is not expressly misleading on its own.[92] Here, Defendants assert that Plaintiffs conceded that Defendants did not make any "overt claim" or "explicit indication" that Anthony Barré sponsored or was affiliated with Defendants' work, as Plaintiffs alleged that Anthony Barré received "no acknowledgement" and "no credit" for his contributions by Defendants.[93] In sum, Defendants argue that under the *Rogers* test, the First Amendment bars Plaintiffs' false endorsement claim.[94]

**4.    Dismissal of Plaintiffs' state law claims**

Next, Defendants contend that Plaintiffs' state law claim under LUTPA and Plaintiffs' claim for unjust enrichment also fail. Defendants assert that the Fifth Circuit has recognized that the requirements of a LUTPA claim mirror those of the Lanham Act, and thus "the claims stand

---

[90] *Id.*

[91] *Id.* (citing *Rogers*, 875 F.2d at 1001).

[92] *Id.* (citing *Mattel v. MCA Records*, 296 F.3d 894, 902 (9th Cir. 2002); *E.S.S.*, 547 F.3d at 1100).

[93] *Id.* at 20.

[94] *Id.* at 21.

15

or fall together."[95] Therefore, Defendants aver, because Plaintiffs' state law claim under LUTPA is predicated on the same alleged conduct as their Lanham Act claim, it fails for the same reason.[96]

Additionally, Defendants argue that Plaintiffs' unjust enrichment claim is preempted by the Copyright Act.[97] According to Defendants, courts in the Fifth Circuit "routinely" find that claims for unjust enrichment are preempted by federal copyright law.[98] Here, Defendants contend that Plaintiffs' unjust enrichment claim and Plaintiffs' copyright infringement claim are both based on the same allegations that Defendants used Plaintiffs' copyrighted works without authorization, and therefore Plaintiffs' unjust enrichment claim is preempted.[99] Additionally, Defendants assert that even if it is not preempted, Plaintiffs' alternative claim for unjust enrichment fails because Plaintiffs have other remedies available at law.[100]

### 5. Angel Barré's standing to assert these claims

Finally, Defendants argue that a plaintiff must own the intellectual property rights at issue to bring a copyright infringement claim.[101] Defendants assert that Plaintiffs' amended complaint only alleges that the Estate of Anthony Barré received all ownership interests in Anthony Barré's

---

[95] *Id.* at 21 (citing *Bd. of Supervisor v. Smack Apparel*, 550 F.3d 465, 490 n.130 (5th Cir. 2008); *Louisiana World Expo. v. Logue*, 746 F.2d 1033, 1039 (5th Cir. 1984); *Rin Tin Tin v. First Look Studios*, 671 F. Supp. 2d 893, 902 (S.D. Tex. 2009)).

[96] *Id.* at 22.

[97] *Id.*

[98] *Id.* (citing *McConley v. Boise*, 2006 WL 709599, at *5 (W.D. La. 2006); *Dorsey v. Money Mack Music*, 304 F. Supp. 2d 858, 865 (E.D. La. 2003)).

[99] *Id.* at 23.

[100] *Id.* (quoting *Coastal Envtl. Specialists v. Chem-Lig Int'l*, 818 So. 2d 12, 19 (La. App. 1st Cir. 2001)).

[101] *Id.* (citing *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008)).

works.[102] Thus, because Plaintiffs failed to allege that Angel Barré owns any rights to the intellectual property at issue, Defendants contend, she lacks standing to assert these claims.[103]

**B.**   ***Plaintiffs' Arguments in Opposition to the Motion to Dismiss***

In opposition, Plaintiffs point out that Defendants' motion to dismiss is the first time they have acknowledged that they copied Anthony Barré's works.[104] Plaintiffs aver that Defendants failed to inform the Court that the "Lemonade" album was sold in a box containing both a music video CD and an audio CD, or that the audio from the music video CD was originally released as the single song of "Formation."[105] Moreover, according to Plaintiffs, the license Defendants alleged that they received was granted by an unknown person named "Ella Henry" for $1,000, who does not own the copyrights to Anthony Barré's YouTube videos.[106] Nonetheless, Plaintiffs assert that Defendants' affirmative defense that they obtained a license cannot be resolved on a Rule 12(b)(6) motion to dismiss.[107]

**1.**   **Dismissal of Plaintiff's copyright infringement claim under the fair use doctrine**

Plaintiffs contend that to establish a claim for copyright infringement, they must prove: (1) ownership of a valid copyright; and (2) that Defendants copied elements of Plaintiffs' original

---

[102] *Id.* at 24.

[103] *Id.*

[104] Rec. Doc. 72 at 2, 5.

[105] *Id.* at 2.

[106] *Id.* at 3, 7.

[107] *Id.* at 9.

works.[108] Plaintiffs assert that, because Defendants admit to copying Plaintiffs' copyrighted works, Plaintiffs have established a *prima facie* case of copyright infringement.[109]

Plaintiffs argue that Defendants misstate the law regarding infringement of sound recordings, as "[t]his is not a fair use case; it's a sampling case of an artist's voice unaltered."[110] According to Plaintiffs, in *Bridgeport v. Dimension Films*, the Sixth Circuit held that the fair use defense did not apply in sampling cases, and that even a sample of a sound recording lasting a few seconds requires a license.[111] Additionally, Plaintiffs point out that fair use is not traditionally applied to pure sampling, as opposed to parodies, criticisms, scholarships, and commentary that courts have found to be "transformative."[112]

Plaintiffs argue that even if the fair use affirmative defense applied, it is a mixed question of fact and law that cannot be decided on a motion to dismiss, and regardless Defendants use of Anthony Barré's voice and words are not protected by fair use.[113]

### i. First fair use factor: the purpose and character of the use

Plaintiffs point out that the first fair use factor also asks if the use is commercial or non-commercial, as commercial use is less likely to be found to be fair use.[114] Plaintiffs assert that this

---

[108] *Id.* at 8–9 (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004)).

[109] *Id.* at 9.

[110] *Id.* at 4.

[111] *Id.* at 10 (quoting *Bridgeport v. Dimension Films*, 410 F.3d 792, 801 (6th Cir. 2005)).

[112] *Id.* at 12–13.

[113] *Id.* at 13.

[114] *Id.* at 16.

distinction considers "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."[115]

Additionally, Plaintiffs assert that Defendants have not shown that their use of Plaintiffs' works was a "transformative" use.[116] Plaintiffs contend that sampling a work to create a general atmosphere or setting for a music video is not transformative.[117] Plaintiffs aver that in each of the "appropriation art cases" cited by Defendants, the work itself was altered by the defendant when it was used in the new work, and thus the original work was "transformed."[118] However, here, Plaintiffs assert that Defendants did nothing to transform Plaintiffs' works, and instead merely used Plaintiffs' work by "captur[ing] a local celebrity to create the atmosphere of New Orleans."[119] According to Plaintiffs, because they plausibly allege that Defendants' use of Plaintiffs' works is both "commercial" and "non-transformative," the first factor weighs in their favor under the Rule 12(b)(6) standard.[120]

### ii.   *Second fair use factor: the nature of the copyrighted work*

With regard to the second factor, Plaintiffs argue that because Plaintiffs' works were "of a creative nature," they should be granted more protection from copying, which weighs against fair

---

[115] *Id.* (quoting *Harper & Row Publishers, Inc.*, 471 U.S. at 562).

[116] *Id.* at 13.

[117] *Id.*

[118] *Id.*

[119] *Id.* at 14–15.

[120] *Id.* at 16.

use.[121] Plaintiffs also contend that Congress revised the Copyright Act to "include unpublished as well as published works within fair use."[122]

### iii.      Third fair use factor: substantiality of the use

As to the third factor, Plaintiffs argue that Defendants used a qualitatively important piece of Plaintiffs' works.[123] Plaintiffs represent that Defendants took the "heart of the work" and "the best parts" of Plaintiffs' works, *i.e.* the phrases and samples that Anthony Barré was known for.[124] According to Plaintiffs, a court in the Southern District of New York found that the substantiality of a use of a copyrighted work is a "classic jury question" when even quantitatively small excerpts are used that a jury could reasonably conclude are qualitatively great.[125]

### iv.      Fourth fair use factor: the effect on the market

Finally, Plaintiffs assert that the fourth factor seeks to balance "the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied."[126] Plaintiffs contend that here there is a "vibrant sampling licensing market" and that Defendants recognized the need to obtain a license when they obtained an allegedly invalid license one week before the music video was released.[127]

---

[121] *Id.* at 14–15.

[122] *Id.*

[123] *Id.* at 17.

[124] *Id.*

[125] *Id.* (quoting *Roy Export Co. Establishment etc. v. Columbia Broadcasting System, Inc.*, 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980)).

[126] *Id.*

[127] *Id.* at 18.

### 2.      Plaintiffs' Lanham Act claim

According to Plaintiffs, in *Facenda v. NFL Films, Inc.*, the Third Circuit recognized that a Lanham Act cause of action can be asserted for misappropriation of a person's distinctive voice and words and is not precluded by the Copyright Act.[128] Plaintiffs assert that the court also held that the First Amendment did not bar the plaintiffs' claims when the promotional video and video game at issue were used for commercial purposes.[129] Likewise, Plaintiffs point out that the Ninth Circuit has held that the Copyright Act did not preclude a plaintiff from recovering under a false endorsement cause of action when an imitation of his distinctive voice was used in a Dorito's commercial.[130]

Here, Plaintiffs assert that they alleged that: (1) Anthony Barré's voice and words were used by Defendants without permission; (2) his voice and word are distinctive; (3) his voice and words were recognized by consumers, which caused confusion regarding his involvement or approval of Defendants' works; (4) Defendants used Anthony Barre's voice and words for commercial purposes; and (5) Defendants profited from the use.[131] Thus, Plaintiffs argue that their complaint sufficiently alleges a false endorsement claim under the Lanham Act.[132]

---

[128] *Id.* at 19 (citing *Facenda v. NFL Films, Inc.*, 542 F.3d 1007 (3rd Cir. 2008)).

[129] *Id.*

[130] *Id.* at 20 (citing *Waits v. Frito-Lay, Inc*., 978 F.2d 1093 (9th Cir. 1992)).

[131] *Id.*

[132] *Id.* at 18.

### 3.     Plaintiffs' LUTPA claim

Similarly, Plaintiffs argue that their complaint sufficiently alleges a violation of LUTPA.[133]

According to Plaintiffs, LUTPA broadly prohibits any "unfair or deceptive acts or practices in the

conduct of any trade or commerce."[134] Plaintiffs contend that, contrary to Defendants' assertions,

the Fifth Circuit has held that, because LUTPA requires proof of fraud, misrepresentation, or other

unethical conduct, it is not precluded by the Copyright Act.[135]

### 4.     Plaintiffs' unjust enrichment claim

Next, Plaintiffs argue that they have sufficiently alleged an action for unjust enrichment in

the alternative.[136] Plaintiffs aver that if the Court finds that they do not have a copyright claim,

then their claim of unjust enrichment would not be preempted.[137] Plaintiffs contend that the Court

should preserve their alternative unjust enrichment remedy at this stage of the proceedings.[138]

## C.     *Defendants' Arguments in Further Support of the Motion to Dismiss*

In reply, Defendants contend that, contrary to Plaintiffs' assertion that small clips of the

YouTube videos were included in a CD/DVD box set, a "review of the audio CD confirms" that

the single of "Formation" does not use Anthony Barré's works.[139] Thus, Defendants aver that those

---

[133] *Id.*

[134] *Id.*

[135] *Id.* (citing *Express Lien, Inc.*, 2016 U.S. Dist. LEXIS 168242, at *6).

[136] *Id.* at 21.

[137] *Id.* (citing *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409 (S.D. N.Y. 2004)).

[138] *Id.*

[139] Rec. Doc. 87 at 1.

22

Defendants involved in the making of the sound recording, composition, and the Super Bowl performance of "Formation" should be dismissed.[140]

### 1. Fair use affirmative defense

Defendants assert that courts "repeatedly have made clear that fair use may be decided at the pleadings stage where, as here, both parties' works are properly before the court."[141] Moreover, Defendants argue that "well-established case law" recognizes that the fair use doctrine applies to "transformative" uses of sound recordings.[142]

Defendants assert that the four fair use factors strongly favor Defendants.[143] As to the first factor of the purpose and character of the use, Defendants argue that in 1994 the Supreme Court rejected the older presumption that the commercial nature of a work weighs against fair use.[144] Now, Defendants aver, the commerciality of the use is "of little significance" to a court's fair use analysis.[145] Defendants further contend that they did alter Anthony Barré's YouTube videos by taking only several seconds of audio from a longer audiovisual work, but regardless Defendants argue that alteration or distortion of an audio clip is not required for a fair use finding.[146] Moreover,

---

[140] *Id.* at 10.

[141] *Id.* at 2 (citing *Brownmark Films v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *City of Inglewood v. Teixeira*, 2015 WL 5025839, at *12 (C.D. Cal. 2015); *Adjmi v. DLT Entm't*, 2015 WL 1499575, at *13 (S.D.N.Y. 2015); *Caner v. Smathers*, 2014 WL 12580461, at *4 (N.D. Tex. 2014); *Faulkner Literary Rights v. Sony Pictures*, 953 F. Supp. 2d 701, 708–712 (N.D. Miss. 2013); *Righthaven v. Realty One Grp.*, 2010 WL 4115413, at *2 (D. Nev. 2010); *Savage v. Council on American-Islamic Relations*, 2008 WL 2951281, at *4 (N.D. Cal. 2008)).

[142] *Id.* (citing *Swatch Group v. Bloomberg*, 756 F.3d 73, 92 (2d Cir. 2014); *Estate of Smith v. Cash Money Records*, 2017 WL 2333770 (S.D.N.Y. 2017); *Threshold Media v. Relativity Media*, 166 F. Supp. 3d 1011, 1029 (C.D. Cal. 2013); *Lennon v. Premise Media*, 556 F. Supp. 2d 310, 327–28 (S.D.N.Y. 2008)).

[143] *Id.*

[144] *Id.* (citing *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 584 (1994)).

[145] *Id.* at 4 (quoting *SOFA Entm't v. Dodger Prods.*, 709 F.3d 1273, 1278–79 (9th Cir. 2013)).

[146] *Id.*

Defendants contend that their work clearly had different objectives and messages than Anthony Barré's YouTube videos.[147]

As to the second fair use factor of the nature of the copyrighted work, Defendants point out that Plaintiffs do not dispute that Anthony Barré's YouTube videos were published, or that this weighs in favor of fair use.[148] Defendants assert that whether Plaintiffs' videos are "creative works" is "of limited usefulness" when the work is being used for a transformative purpose.[149]

With regard to the third factor, Defendants aver that Plaintiffs do not dispute that ten seconds of audio constitute a quantitatively small amount of the underlying works.[150] Defendants assert that, because the YouTube videos merely "consist of Mr. Barré's disjointed comments about a wide array of mundane topics, personal grievances, and observations," Defendants' use of a small clip of those videos is also qualitatively insignificant.[151]

Fourth, Defendants assert that Plaintiffs failed to identify any market for Anthony Barré's works, as they remain publicly available for free on YouTube.[152] According to Defendants, the Second Circuit has held that alleged losses of license fees cannot be used as evidence of market harm, as a copyright owner "is not entitled to a licensing fee for a work that otherwise qualifies for the fair use defense."[153]

---

[147] *Id.* at 4–5.

[148] *Id.* at 5.

[149] *Id.* at 5–6 (quoting *Bill Graham Archives*, 448 F.3d at 612).

[150] *Id.* at 6.

[151] *Id.*

[152] *Id.*

[153] *Id.* (quoting *Leibovitz v. Paramount Pictures*, 137 F.3d 109, 117 (2d Cir. 1998)).

## 2. Plaintiffs' false endorsement claim

Next, Defendants aver that Plaintiffs failed to address their argument that the First Amendment defeats their Lanham Act claim pursuant to the *Rogers* test.[154] Defendants assert that Plaintiffs' citation to *Facenda v. NFL Films* is distinguishable here, as the *Facenda* court determined that since the promotional video for a video game was "commercial speech rather than artistic expression," the *Rogers* test did not apply.[155] By contrast, here Defendants argue that the *Rogers* test applies because their works are clearly artistic expressions, and thus the First Amendment precludes Plaintiffs from bringing a false endorsement claim for Defendants' use of Anthony Barré's words and voice in Defendants' artistic work.[156]

Moreover, Defendants assert that Plaintiffs' false endorsement claim fails for the additional reason that performers generally may not assert trademark rights in a performance.[157] Defendants point to *EMI v. Hill*, where the Second Circuit determined that the "creation and expression of an original work is protected by copyright law, and once an original work has been produced trademark law is not the proper means of protecting the rights in this originality."[158] By contrast, Defendants argue that in *Waits v. Frito-Lay*, the case cited by Plaintiffs, the defendants did not use the singer's copyrighted works, but rather hired an impersonator of the plaintiff's distinctive voice to make a television commercial.[159]

---

[154] *Id.* at 7.

[155] *Id.* (citing *Facenda*, 542 F.3d at 1018).

[156] *Id.*

[157] *Id.* at 8.

[158] *Id.* (quoting *EMI v. Hill, Holliday,* 228 F.3d 56, 64 (2d Cir. 2000)).

[159] *Id.* (citing *Waits v. Frito-Lay*, 978 F.2d 1093, 1096, 1111 (9th Cir. 1992)).

### 3.  Plaintiffs' state law claims

Defendants assert that Plaintiffs' LUTPA claim fails for the same reasons as their false endorsement claim, and that Plaintiffs "incorrectly suggest that courts may decide what constitutes unfair competition without any limitation."[160] Likewise, Defendants argue that Plaintiffs failed to address either of Defendants' arguments that the unjust enrichment claim should be dismissed because it is preempted by the Copyright Act and is only available to fill a gap in the law.[161]

### 4.  Angel Barré's standing

Finally, Defendants represent that Plaintiffs failed to dispute that their complaint only alleges that the Estate owns all copyright and trademark rights at issue in this case, and thus Angel Barré lacks standing to assert these claims in this lawsuit.[162]

### D.  *Plaintiffs' Arguments in Further Opposition to the Motion to Dismiss*

In their sur-reply, Plaintiffs again point out that a video DVD of the "Lemonade" album and the audio CD of "Formation" were sold as a box set, and the first words of "Formation" on the "Lemonade" video are Anthony Barre's voice and copyrighted works.[163]

Next, Plaintiffs argue that Defendants' citation in a footnote in their reply brief to *Estate of Smith v. Cash Money Records* is distinguishable, as that case was decided on a motion for summary judgment after discovery and involved the artist Drake altering the words and context of the sound recording he used to make it "transformative." [164] Here, Plaintiffs contend that

---

[160] *Id.* at 9.

[161] *Id.*

[162] *Id.* at 10.

[163] Rec. Doc. 90 at 5.

[164] *Id.* at 1 (citing *Estate of Smith v. Cash Money Records, Inc.*, WL 2333770, (S.D.N.Y. May 30, 2017)).

Defendants did not alter Anthony Barré's words, but instead used his exact words and voice to provide a New Orleans atmosphere to "Formation."[165]

Plaintiffs further argue that "courts generally do not recognize a fair use defense when a sound recording is copied for commercial gain."[166] Plaintiffs represent that the Fifth Circuit has held that the profit/non-profit inquiry does not ask whether monetary gain was the sole motive of defendant, but rather "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."[167] According to Plaintiffs, Defendants released the "Formation" music video the day before Carter's Super Bowl Half-Time show to promote her performance, increase subscription revenues from Tidal, and increase sales for the "Lemonade" album and the "Formation World Tour," which may have exceeded over $300 million.[168]

Finally, Plaintiffs point out that in *Mabile v. BP, P.L.C.* this Court rejected "as premature" the defendant's arguments that the plaintiff's state law claims were preempted by federal patent law, and instead found that the plaintiff had alleged sufficient facts to state claims for a violation of LUTPA and conversion.[169] Similarly here, Plaintiffs aver, the Court should reject Defendants' "premature arguments" that Plaintiffs cannot pursue Lanham Act and state law claims.[170]

---

[165] *Id.*

[166] *Id.*

[167] *Id.* at 5–6 (quoting *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004)).

[168] *Id.* at 6.

[169] *Id.* at 3, 7 (citing *Mabile v. BP, P.L.C.*, 2016 U.S. Dist. LEXIS 129540, *83 (E.D. La. Sept. 22, 2016) (Brown, J.)).

[170] *Id.* at 7.

E.      **Defendants' "Notice of Supplemental Authority"**

In their "Notice of Supplemental Authority," Defendants assert that on June 14, 2017, a court in the United States District Court for the District of Nevada concluded that the "fair use" copyright defense can be decided as a matter of law.[171]

F.      **Plaintiffs' Response to Defendants' "Notice of Supplemental Authority"**

In response, Plaintiffs argue that *Corbello v. DeVito* is clearly distinguishable, as it was a decision rendered on a Rule 50(b) motion for judgment as a matter of law after a 15-day jury trial.[172] Moreover, Plaintiffs assert that the case is factually distinguishable, as the defendant had only taken descriptions of certain historical events from the plaintiff's autobiography to alter and use in the Broadway show *Jersey Boys*.[173]

## III. Law and Analysis

A.      **Legal Standard on a Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[174] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[175] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[176] "Factual allegations must be enough to raise a right to relief above the

---

[171] Rec. Doc. 95 at 1 (citing *Corbello v. DeVito*, No. 08-0867 (D. Nev. June 14, 2017)).

[172] Rec. Doc. 93 at 1.

[173] *Id.* at 2.

[174] Fed. R. Civ. P. 12(b)(6).

[175] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[176] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

speculative level."[177] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[178]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[179] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[180] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[181] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[182] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[183] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[184] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[185] If factual allegations are insufficient to raise a right to relief

---

[177] *Twombly*, 550 U.S. at 556.

[178] *Id.* at 570.

[179] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[180] *Iqbal*, 556 U.S. at 677–78.

[181] *Id.* at 679.

[182] *Id.* at 678.

[183] *Id.*

[184] *Id.*

[185] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

29

above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[186]

## B.    *Analysis*

In their motion to dismiss, Defendants contend the Defendants who were solely involved in producing the sound recording and composition of "Formation" or the Super Bowl Half-Time show should be dismissed with prejudice, as they did not use Plaintiffs' copyrighted works.[187] Defendants further seek to dismiss: (1) Plaintiffs' copyright infringement claim; (2) Plaintiffs' Lanham Act claim; (3) Plaintiffs' LUTPA claim; and (4) Plaintiffs' unjust enrichment claim.[188] Finally, Defendants aver that Angel Barré lacks standing to assert these claims on her behalf.[189] The Court will address each argument in turn.

### 1.    **Whether Defendants only involved in the production of the single "Formation" or the Super Bowl Half-Time show should be dismissed**

First, Defendants argue that Plaintiffs' works were only used in the music video and live performances of "Formation," but that Defendants did not use Anthony Barré's YouTube videos in the sound recording or composition of "Formation" or in the Super Bowl live performance of "Formation."[190]

---

[186] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[187] Rec. Doc. 50-1 at 2, 6–7, 24.

[188] *Id.* at 2–3, 8–23.

[189] *Id.* at 23–24.

[190] Rec. Doc. 50-1 at 24.

### i.     Defendants involved in producing the single "Formation"

To establish a claim for copyright infringement in the Fifth Circuit, Plaintiffs must prove that: (1) they own a valid copyright; and (2) Defendants "copied constituent elements of [Plaintiffs'] work that are original."[191] In their amended complaint, Plaintiffs allege that they own valid copyrights to Anthony Barré's two YouTube videos at issue in this litigation: "Booking the Hoes from New Wildings" and "A 27 Piece Huh?"[192] Plaintiffs also allege in relevant part that Defendants "used and exploited the actual voice, words and performance of Anthony Barré [in those two YouTube videos], without authorization in the extremely popular 'Formation' master recording, composition and video, and in theatrical and other live performances."[193]

Moreover, in response to Defendants' assertion that the single "Formation" did not use Plaintiffs' copyrighted works, Plaintiffs point out in their opposition memorandum that the audio from the music video CD was originally released as the single for "Formation."[194] Thus, Plaintiffs aver that because "[t]he Formation single contained Anthony Barre's voice speaking the copyrighted phrases," the Court should deny Defendants' motion to dismiss.[195] By contrast, Defendants failed to sufficiently address Plaintiffs' allegation that the single for "Formation"

---

[191] *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004) *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) (citations omitted); *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995) (citing *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 387 (5th Cir. 1984)).

[192] *See* Rec. Doc. 2 at 3 (Plaintiffs alleging that they own a "protectable copyright interest, both in the musical composition and the sound recording, to Anthony Barré's original and unique works of performance art," including "Booking the Hoes from New Wildings" ("Copyright Office Registration Number PA u 3-795-556") and "A 27 Piece Huh?" ("Copyright Office Registration Number PA 1-984-735")).

[193] Rec. Doc. 2 at 2.

[194] Rec. Doc. 72 at 2.

[195] *Id.* at 3.

originally included Plaintiffs' copyrighted works such that a motion to dismiss at this stage would be proper. Therefore, construing the amended complaint in Plaintiffs' favor and accepting all well-pleaded facts as true,[196] the Court finds that Plaintiffs have sufficiently alleged a claim for copyright infringement against those Defendants involved in the production of the sound recording and composition of "Formation."

> ### ii.   *Defendants involved in the Super Bowl Half-Time show*

In Plaintiffs' amended complaint, Plaintiffs also allege that Carter performed "Formation" during the Super Bowl Half-Time show on February 7, 2016.[197] Defendants argue that they did not use any part of Plaintiffs' copyrighted works during the Super Bowl performance of "Formation," and therefore those Defendants involved in the production of the Super Bowl Half-Time show should be dismissed.[198] However, even assuming that Defendants are correct that Plaintiffs' copyrighted works were not used during the Super Bowl Half-Time show, Defendants' motion to dismiss does not specify which Defendants, if any, were *solely* involved in the production of the Super Bowl Half-Time show. Rather, Defendants provide only one list of Defendants who worked on the sound recording or composition of "Formation" *and* the Super Bowl performance.[199]

---

[196] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[197] Rec. Doc. 2 at 15.

[198] Rec. Doc. 50-1 at 24.

[199] *Id.* at 24–25 (Defendants asserting that the following Defendants were involved in the "Song's sound recording or composition or the Super Bowl performance:" Parkwood Entertainment, Michael L. Williams, Khalif Brown, Asheton Hogan, WB Music Corporation, Warner-Tamerlane Publishing Corp., Eardrummers Music Publishing, and Oakland 13 Music).

Moreover, in their amended complaint, Plaintiffs allege that each of those Defendants identified in Defendants' motion to dismiss contributed to the writing, composing, producing, publishing, and/or licensing of "Formation," and Plaintiffs do not allege that any Defendant was solely involved in the Super Bowl Half-Time show.[200] Accordingly, the Court denies Defendants' motion to dismiss to the extent that it seeks to dismiss those Defendants who were not involved in the production of the music video and live performances of "Formation."

### 2.     Copyright Infringement Claim

Next, Defendants argue that Plaintiffs' claim for copyright infringement should be dismissed, as Defendants assert that their use of Plaintiffs' copyrighted works is protected under the fair use doctrine.[201] In opposition, Plaintiffs cite to *Bridgeport v. Dimension Films*, a Sixth Circuit case that Plaintiffs aver stands for the bright line rule that infringers must either "get a license or do not sample," to argue that the fair use doctrine does not apply to a "sampling case of an artist's voice unaltered."[202] Plaintiffs further argue that even if the fair use affirmative defense applied here, each of the four factors weighs against a finding that Defendants' use of Anthony Barré's voice and words is protected under the fair use doctrine.[203]

Section 106 of the Copyright Act confers a bundle of exclusive rights to the owner of the copyright.[204] As the Supreme Court has recognized, "[u]nder the Copyright Act, these rights—to

---

[200] *Compare* Rec. Doc. 50-1 at 24–25 (Defendants seeking to dismiss the following Defendants: Parkwood Entertainment, Michael L. Williams, Khalif Brown, Asheton Hogan, WB Music Corporation, Warner-Tamerlane Publishing Corp., Eardrummers Music Publishing, and Oakland 13 Music) *with* Rec. Doc. 2 at 3–6 (Plaintiffs alleging that each of those Defendants were involved in the writing, composing, producing, and/or publishing of "Formation").

[201] Rec. Doc. 50-1 at 2, 8.

[202] Rec. Doc. 72 at 10–11 (quoting *Bridgeport v. Dimension Films*, 410 F.3d 792, 801 (6th Cir. 2005)).

[203] *Id.* at 13.

[204] 17 U.S.C § 106; *see Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546–47 (1985).

publish, copy, and distribute the author's work—vest in the author of an original work from the time of its creation."[205] The Supreme Court has opined that the rights conferred by copyright "are designed to assure contributors to the store of knowledge a fair return for their labors."[206]

However, the Copyright Act subjects the owner's exclusive rights to certain statutory exceptions. In particular, Section 107 codifies the privilege of other authors to make "fair use" of an earlier author's work.[207] The Supreme Court has noted that fair use is "traditionally defined" as "a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent."[208] Thus, fair use is an affirmative defense "that can excuse what would otherwise be an infringing use of copyrighted material."[209] The burden of proof is on Defendants to establish the fair use affirmative defense.[210]

The fair use analysis is a mixed question of law and fact and requires a case-by-case determination on whether a particular use of a copyrighted work is fair.[211] Section 107 provides a

---

[205] *Harper & Row Publishers, Inc.*, 471 U.S. at 546–47; *see also Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 549 (S.D.N.Y. 2013).

[206] *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).

[207] *Harper & Row Publishers, Inc.*, 471 U.S. at 546; *see* 17 U.S.C. § 107.

[208] *Harper & Row Publishers, Inc.*, 471 U.S. at 549 (citing H. Ball, *Law of Copyright and Literary Property* 260 (1944)).

[209] *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1238 (11th Cir. 2014).

[210] *See Harper & Row Publishers, Inc.*, 471 U.S. at 546 ("The drafters resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as an affirmative defense requiring a case-by-case analysis."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets."); *see also Patton*, 769 F.3d at 1238; *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 549 (S.D.N.Y. 2013) (citing *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998)).

[211] *Campbell*, 510 U.S. at 577; *Harper & Row Publishers, Inc.*, 471 U.S. at 549, 560; *Faulkner Literary Rights, LLC v. Sony Pictures Classics Inc.*, 953 F. Supp. 2d 701, 707 (N.D. Miss. 2013).

list of four relevant but non-exclusive factors for courts to consider when conducting the fair use analysis: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect on the potential market for or value of the copyrighted work.[212] No single factor is determinative, and courts are instructed to weigh all the results together, in light of the purpose of the Copyright Act, to determine whether the affirmative defense of fair use has been established.[213] In sum, "[t]he ultimate test of fair use is whether the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it."[214]

### i.     Whether Defendants may assert a fair use defense

As noted *supra*, Plaintiffs argue that the Sixth Circuit's decision in *Bridgeport* demonstrates that the fair use doctrine does not apply to instances of digital sampling of a sound recording.[215] The Court finds Plaintiffs' argument that fair use does not apply here unpersuasive. First, the fair use doctrine is a statutory exception under the Copyright Act to the generally exclusive set of rights given to copyright holders, and Plaintiffs have not pointed to any language in Section 107 of the Copyright Act that excludes the fair use affirmative defense in instances of digital sampling. Second, Plaintiffs misconstrue the holding of *Bridgeport* itself. In *Bridgeport*, the Sixth Circuit only noted that the district judge had found that the use of a sound recording was "de minimis" when it granted the defendant's motion for summary judgment, and therefore did

---

[212] *Id.* at 560–61.

[213] *See Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 549 (quoting *Campbell*, 510 U.S. at 578).

[214] *Id.* (quoting *Bill Graham Archives,* 448 F.3d at 608).

[215] Rec. Doc. 72 at 10.

not consider the defendant's fair use defense.[216] In fact, the Sixth Circuit noted that "[o]n remand, the trial judge is free to consider this defense and we express no opinion on its applicability to these facts."[217] Accordingly, the Court finds that Defendants may assert a fair use defense.

The Court additionally notes that, as a general matter, the Fifth Circuit has determined that Rule 12(b)(6) motions to dismiss typically cannot be granted on affirmative defense grounds unless "a successful affirmative defense appears clearly on the face of the pleadings."[218] In *Backe v. LeBlanc*, for instance, the Fifth Circuit instructed that the affirmative defense of qualified immunity may be raised on a Rule 12(b)(6) motion to dismiss, and held that a plaintiff can survive the motion to dismiss by "assert[ing] facts which, if true, would overcome the defense of qualified immunity."[219] While it does not appear that the Fifth Circuit has directly addressed the question of whether the fair use defense may be raised on a Rule 12(b)(6) motion to dismiss, other courts have recognized that under certain circumstances a fair use determination can be made at the motion to dismiss stage.[220] Here, neither party disputes that Defendants used certain portions of Plaintiffs'

---

[216] *Bridgeport*, 410 F.3d at 805.

[217] *Id.*

[218] *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *see Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005) (noting that "generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense"); *see also BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr.*, 176 F. Supp. 3d 606, 623 (W.D. La. 2016) (finding that the "procompetitive" affirmative defense to alleged violations of federal antitrust laws cannot be raised at the motion to dismiss stage of litigation, as it is "better suited for a summary judgment motion"); *see also* 27 Fed. Proc., L. Ed. § 62:88 (noting that affirmative defenses "generally may not be raised by a motion to dismiss" unless the facts are admitted or are not controverted); 61A Am. Jur. 2d Pleading § 320 (stating that a number of affirmative defenses can be resolved on the face of a plaintiff's complaint when "the facts with respect to an affirmative defense are admitted or are not controverted, or are conclusively established so that nothing further can be developed by a trial of the issue," including such affirmative defenses as statute of limitations, lack of standing, release, and preemption).

[219] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[220] *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (noting that courts "should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses," but recognizing that the fair use affirmative defense may be an exception); *Shell v. DeVries*, No. 07-1086, 2007 WL 4269047, at *1 (10th Cir. Dec. 6, 2007) (affirming a district court's decision to grant a motion to dismiss on fair use grounds); *BWP Media USA, Inc.*

copyrighted works without authorization in producing Defendants' new works. Moreover, Defendants argue in their motion to dismiss that, even "on the face of the pleadings," Defendants have established that Plaintiffs' copyright infringement claim is barred under the fair use doctrine.[221] Accordingly, the Court will proceed to consider whether Plaintiffs have "asserted facts which, if true, would overcome the defense of" fair use.[222]

### ii. First fair use factor: the purpose and character of the use

Under 17 U.S.C. § 107, the first factor in the fair use inquiry is the "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." When analyzing the first factor of the fair use test, courts typically consider whether the infringing use is "transformative."[223] "Under this analysis, a use is transformative where it does not merely supersede the object of the original creation but instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message."[224] The Supreme Court has instructed that while a transformative use is not

---

*v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) (noting that the Second Circuit recognizes that affirmative defenses may be adjudicated on a motion to dismiss when the facts necessary to establish the defense are evidence on the face of the complaint, and deciding the fair use inquiry on a motion to dismiss); *Levingston v. Earle*, 2013 WL 6119036 (D. Az. Nov. 21, 2013) (raising the issue of fair use *sua sponte* on the defendant's Rule 12(b)(6) motion and ordering the plaintiff to respond); *Payne v. Courier-Journal*, 2005 WL 1287434, at *3 (W.D. Ky. 2005) (finding fair use on a motion to dismiss, as the original and infringing works were in the record and the court could make the determination as a matter of law); *see also* 1 E-Commerce and Internet Law 4.10[1] (concluding that when fair use determinations "may be made based on a side-by-side comparison [of the two works] . . . fair use may be resolved on a motion to dismiss"); Patry on Fair Use § 7:5 (pointing out that "[i]ncreasingly, courts have considered fair use" on a Rule 12(b)(6) motion to dismiss and listing relevant cases) (citations omitted).

[221] Rec. Doc. 50-1 at 2, 7–8.

[222] *Backe*, 691 F.3d at 648.

[223] *Campbell*, 510 U.S. at 579; *Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 551; 5 A.L.R. Fed. 3d Art. 6.

[224] *Campbell*, 510 U.S. at 579; *Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 551; 5 A.L.R. Fed. 3d Art. 6.

"absolutely necessary" to make a fair use finding, transformative works "lie at the heart of the fair use doctrine" and generally further "the goal of copyright, to promote science and the arts."[225] The preamble of Section 107 provides an illustrative and non-exclusive list of several transformative uses of a copyrighted work, including "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research."[226]  However, as the Second Circuit has noted, a use of copyrighted material "that merely repackages or republishes the original is unlikely to be deemed a fair use."[227]

Here, the parties both dispute the extent to which Defendants' use of the clips from Anthony Barré's YouTube videos can be considered "transformative." On the one hand, Defendants point out that the original videos merely feature Anthony Barré speaking "stream-of-consciousness to the camera as he walks the streets of New Orleans."[228] Thus, Defendants assert that Anthony Barré's videos were used as "raw material . . . for an entirely different purpose than the originals," *e.g.*, as one example of various depictions of the history and culture of New Orleans for a song about "black Southern resilience" and Carter's "cultural heritage."[229] By contrast, Plaintiffs allege that Defendants merely inserted unaltered portions of Plaintiffs' copyrighted works directly into Defendants' work.[230] Moreover, Plaintiffs assert that using an audio clip to

---

[225] *Campbell*, 510 U.S. at 579.

[226] *See* 17 U.S.C. § 107; *Campbell*, 510 U.S. at 577 (instructing that the first factor inquiry "may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like"); *Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 551.

[227] *See Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 551 (quoting *Infinity Broadcast Corp.*, 150 F.3d at 108 & n. 2).

[228] Rec. Doc. 50-1 at 3, 11.

[229] *Id.* at 10–11.

[230] Rec. Doc. 72 at 13–14.

"create the tone, mood, setting, and location of the New Orleans-themed 'Formation'" does not qualify as a "transformative" fair use.[231]

Here, the Court finds that Plaintiffs have alleged sufficient facts in their amended complaint to support a finding at this stage of litigation that the first factor could ultimately weigh against a finding of fair use. Plaintiffs plausibly allege that Defendants did not "add[] something new, with a further purpose or different character," but rather used unmodified audio clips from Anthony Barré's YouTube videos as an illustrative example of New Orleans culture through the voice and catchphrases of a well-known local icon.[232] As the Ninth Circuit noted in *Seltzer v. Green Day, Inc.*, "[i]n the typical 'non-transformative' case, the use is one which makes no alteration to the *expressive content* or *message* of the original work."[233] Here, Plaintiffs have sufficiently alleged that Defendants' "verbatim copying" from YouTube videos of Anthony Barré saying such lines as "What happened at the New Orleans" did not imbue the short clips with "new expression, meaning or message," but rather used Anthony Barré's original "expression, meaning or message" to introduce "Formation" and "create the tone, mood, setting and location of the New Orleans-theme 'Formation.'"[234]

Defendants cite to a number of distinguishable fair use cases where courts have found that the first factor weighed in favor of a finding of fair use.[235] For example, in *Seltzer*, the Ninth Circuit affirmed a district court's decision to grant summary judgment in favor of the defendants on fair

---

[231] *Id.* at 14.

[232] Rec. Doc. 2 at 12 (alleging that Anthony Barré, also known as "Messy Mya," was a "well-known performance comedian," a "YouTube sensation," and "very famous" for his signature catchphrases).

[233] *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (emphasis in original).

[234] *Id.* at 2, 19–20.

[235] Rec. Doc. 50-1 at 9–11.

use grounds, whereas here the Court considers a motion to dismiss.[236] Moreover, the Ninth Circuit in *Seltzer* determined that the band Green Day's use of an artist's illustration was "transformative" in part because the plaintiff's drawing of a screaming face was modified with a red "spray-painted" cross in the middle, which the court concluded changed the drawing's original expressive content to one about the "hypocrisy of religion."[237] Here, however, Plaintiffs have plausibly alleged in their complaint that Defendants did not change or alter the "expressive content or message" of Anthony Barré's YouTube videos, but rather used unmodified clips without adding anything new.[238]

Likewise, in *Cariou*, the Second Circuit held that the defendant's alterations of twenty-five of the plaintiff's "serene and deliberately composed portraits" of Rastafarians to create "crude," "jarring," "hectic," and "provocative" works featuring distorted human forms was "transformative" as a matter of law.[239] By contrast, the *Cariou* court further determined that the defendant made only "minimal alterations" to five other portraits by the plaintiff such that the court could not determine whether the defendant was entitled to a fair use defense as a matter of law.[240] Similarly here, Plaintiffs have plausibly alleged that Defendants did not alter the clips from Plaintiffs' copyrighted works at all before using them in the creation of "Formation."[241]

---

[236] *Seltzer*, 725 F.3d at 1177.

[237] *Id.*

[238] Rec. Doc. 2 at 19–20 ("The specific and unique characteristics of the male voice of "Booking the Hoes from New Wildings" and "A 27 Piece Huh?" and the infringing "Formation" are identical . . . "Formation copies Anthony Barre's works."); *see* Rec. Doc. 72 (alleging that "Defendant copied the sound recording exactly without modifying the underlying sound recording in any way to differentiate it from the original").

[239] *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013).

[240] *Id.* at 710–11.

[241] Rec. Doc. 2 at 19–20.

Moreover, Plaintiffs point out that the first fair use prong under Section 107 also considers "whether such use is of a commercial nature or is for nonprofit educational purposes," and Plaintiffs plausibly allege in their amended complaint that Defendants' copying of Plaintiffs' copyrighted works constitutes a "continuing commercial use and exploitation of Anthony Barré's words, voice and performances."[242] For example, Plaintiffs aver in their complaint that Defendants required listeners to subscribe to the Tidal music service to access "Formation" upon its exclusive release, which resulted in Tidal "receiving more than a million new subscribers, who pay $12.99 per month."[243] Plaintiffs further allege that Defendants sold more than 543,000 copies of "Formation" and sold more than $250 million in tickets and revenues during the "Formation World Tour."[244]

The Court notes that Defendants cite to the Ninth Circuit's holding in *SOFA Entertainment, Inc. v. Dodger Productions, Inc.* to argue that whether a particular use of copyrighted material is "commercial" is "of little significance" when a defendant's use is transformative.[245] Here, however, the Court finds that Plaintiffs have plausibly alleged at this stage of litigation that Defendants' use of Plaintiffs' copyrighted works was *not* transformative. Moreover, Section 107 explicitly instructs courts to consider "the purpose and character of the use, *including whether such use is of a commercial nature* or is for nonprofit educational purposes."[246] As the Supreme Court has

---

[242] *Id.* at 21.

[243] *Id.* at 16.

[244] *Id.* at 17–18.

[245] Rec. Doc. 50-1 at 11 (citations omitted). *See generally SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278–79 (9th Cir. 2013) ("Moreover, because Dodger's use of the clip is transformative, the fact that *Jersey Boys* is a commercial production is of little significance.").

[246] 17 U.S.C. § 107 (emphasis added); *see also Campbell,* 510 U.S. at 584 ("The language of the statute makes clear that the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character."); *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 450 n.32

previously held, the "crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."[247] Thus, the Court finds that Plaintiffs have sufficiently alleged that Defendants' use of Plaintiffs' copyrighted works "is of a commercial nature," rather than for a "nonprofit educational purpose[]."[248] In sum, the Court finds that at this stage of litigation Plaintiffs have alleged sufficient facts to show that the first factor of the fair use analysis could ultimately weigh against a finding of fair use, such that Plaintiffs can overcome Defendants' fair use defense on this motion to dismiss.

### iii.    Second fair use factor: the nature of the copyrighted work

Next, Section 107 instructs courts to consider "the nature of the copyrighted work."[249] Courts have typically looked to two considerations of the work when analyzing the second factor: (1) whether the work is more creative or factual in nature; and (2) whether the work is published or unpublished.[250] The Supreme Court has noted that copyright law "generally recognizes a greater need to disseminate factual works than works of fiction or fantasy," and the fact that a work is

---

(1984) (opining that "the commercial or non-profit character of an activity, while not conclusive with respect to fair use, can and should be weighed along with other factors in fair use decisions.") (quoting H. Rep. No. 94–1476, at 66); *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 409–10 (5th Cir. 2004) ("While commerciality generally weighs against finding fair use, it does not end the inquiry; rather, the fair use determination depends on the totality of the factors considered.").

[247] *Harper & Row Publishers, Inc.*, 471 U.S. at 562.

[248] 17 U.S.C. § 107; *see also Cariou*, 714 F.3d at 706 (Second Circuit noting that "there is no question that Prince's artworks are commercial," but finding that the transformative nature of the new work had greater weight).

[249] 17 U.S.C. § 107.

[250] *Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("In general, fair use is more likely to be found in factual works than in fictional works."); *Cariou*, 714 F.3d at 709–10 ("We consider (1) whether the work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." (internal quotation marks and citations omitted)); *see also* 5 A.L.R. Fed. 3d Art. 6.

unpublished weighs against a finding of fair use.[251] Defendants argue that this factor weighs in favor of a finding of fair use, as it is undisputed that Anthony Barré published his YouTube videos in 2010, more than five years prior to Defendants' use of the videos.[252] By contrast, Plaintiffs assert that because they have alleged that Anthony Barré's videos are creative works, the second fair use factor weighs in their favor.[253]

With regard to the first consideration, the Court finds that Plaintiffs have sufficiently alleged that Anthony Barré's YouTube videos were creative works, as Plaintiffs represent in their amended complaint that Anthony Barré was a "well-known performance comedian" and that the two YouTube videos at issue in this litigation are "performance art."[254] Courts have recognized that creative works are "closer to the core of intended copyright protection" than are works that are predominantly factual, such as news or non-fiction.[255] That is, a finding of fair use is more likely with respect to factual works than it is with respect to creative works.[256] Therefore, this first consideration appears to weigh against a finding of fair use sufficient to prevent dismissal of Plaintiffs' copyright infringement claim on fair use grounds at this stage of the litigation.

As to the second consideration, the Supreme Court has noted that the scope of the fair use doctrine is narrower for unpublished works, as it implicates an author's "right of first

---

[251] *Harper & Row Publishers, Inc.*, 471 U.S. at 563.

[252] Rec. Doc. 50-1 at 12.

[253] *Id.* at 17.

[254] Rec. Doc. 2 at 14.

[255] *Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 557 (citing *Infinity Broadcast Corp.*, 150 F.3d at 109).

[256] *Id.* (citing *Nihon*, 166 F.3d at 73).

publication."[257] Here, Plaintiffs' amended complaint clearly alleges that both of Anthony Barré's videos were published on YouTube in 2010.[258] However, other courts have determined that a finding that a work is "creative and published" ultimately weighs against a fair use determination.[259] Thus, because creative works are "closer to the core of intended copyright protection," the Court finds that at this stage of litigation Plaintiffs have alleged sufficient facts to show that the second factor of the fair use analysis could ultimately weigh against a finding of fair use, such that dismissal of Plaintiffs' copyright infringement claim on fair use grounds is not warranted.

### iv.   *Third fair use factor: the amount and substantiality of the portion used*

Pursuant to 17 U.S.C. § 107, the third factor under the fair use analysis is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." Courts look to the "quantitative" amount of the copyrighted work used as well as the "qualitative" importance of the portion copied.[260] However, even when only a small portion is copied, "its qualitative nature may weigh against a finding of fair use if it takes the most expressive elements or the 'heart' of a work."[261]

---

[257] *Harper & Row Publishers, Inc.*, 471 U.S. at 564.

[258] Rec. Doc. 2 at 13.

[259] *See Campbell,* 510 U.S. at 584 (noting that publicly disseminated and creative works are within the core of copyright law's "protective purposes"); *Stewart*, 495 U.S. at 237 (recognizing that "fair use is more likely to be found in factual works than in fictional works" and that a "motion picture based on a fictional short story obviously falls into the latter category"); *Cariou*, 714 F.3d at 710 (finding that the second factor weighs against a fair use determination for "creative and published" works, but acknowledging that this factor "may be of limited usefulness" when the work is being used for a "transformative purpose"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001) (affirming district court's finding that published, copyrighted music compositions and sound recordings are creative, "which cuts against a finding of fair use under the second factor").

[260] *Campbell,* 510 U.S. at 584 (noting that the third factor "calls for thought not only about the quantity of the materials used, but about their quality and importance, too"); 5 A.L.R. Fed. 3d art. 6.

[261] *Harper & Row Publishers, Inc.*, 471 U.S. at 564 (determining that even though the defendant only used

Here, it appears to be undisputed that Defendants used four seconds of audio from the five minute and fourteen second YouTube video titled "Booking the Hoes from New Wildings," and six seconds of audio from the one minute and fifty-three second YouTube video titled "A 27 Piece Huh?"[262] Defendants argue that they used only an "insignificant amount" of the audio from the YouTube videos, and Defendants further contend that they used a qualitatively insignificant portion as well.[263] In particular, Defendants aver that they did not take the "heart of the work[s]" because they argue "[t]here is no 'heart of these works, which consist of Mr. Barré's disjointed comments about a wide array of mundane topics, personal grievances, and observations."[264] By contrast, Plaintiffs assert that Defendants took a "recognizable, distinct and important" part of Anthony Barré's YouTube videos and the "heart of the work[s]," *i.e.* qualitatively important portions.[265] Plaintiffs point out that the clips used by Defendants contained phrases and words that Anthony Barré was known for and were "the best parts."[266] Plaintiffs argue that the exact qualitative importance of the clips used is a factual issue to be determined by the jury.[267]

---

an "insubstantial portion" of the plaintiff's manuscript, it was "the most interesting and moving parts" and were thus qualitatively important); *Roy Exp. Co. Establishment of Vaduz, Liechtenstein, Black Inc., A. G. v. Columbia Broad. Sys., Inc.*, 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980) (finding that, even assuming that the use of one minute and forty-five seconds of a one hour and twelve minute film was quantitatively small, "the jury could reasonably have concluded that it was qualitatively great"), *aff'd sub nom. Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095 (2d Cir. 1982); 5 A.L.R. Fed. 3d art. 6.

[262] *See* Rec. Doc. 50-1 at 4; Rec. Doc. 72 at 12 (Plaintiffs pointing out that "Defendants admit that 4 seconds of Anthony Barre's vidoes [sic] in one case and 6 seconds in another were used"); Rec. Doc. 87 at 6 (Defendants asserting in their reply memorandum that Plaintiffs do not do dispute that "the ten seconds of audio that Defendants used" is a quantitatively small amount).

[263] Rec. Doc. 50-1 at 13; Rec. Doc. 87 at 6.

[264] Rec. Doc. 87 at 6.

[265] Rec. Doc. 72 at 17.

[266] *Id.*

[267] *Id.*

In Plaintiffs' amended complaint, Plaintiffs allege that Anthony Barré is "well known for his quotes and catch phrases . . . and raspy voice." Plaintiffs further allege that the three phrases copied by Defendants are "quantitatively and qualitatively distinct, important, and recognizable portions of" the two YouTube videos.[268] For example, Plaintiffs assert that one of Anthony Barré's popular catch phrases was "back by popular demand," which Plaintiffs argue was one of the phrases misappropriated by Defendants.[269] Plaintiffs also aver that Defendants used Anthony Barré's actual voice, which "was a unique instrument" and "inextricably linked to his performance art."[270]

In *Harper & Row Publishers, Inc. v. Nation Enterprises*, the Supreme Court advised that even if the actual amount of copyrighted material used by a defendant was "an insubstantial portion," the qualitative importance of the material can weigh against a finding of fair use.[271] There, the Supreme Court noted that the words quoted by the defendants were considered "the most interesting and moving parts of the entire manuscript" and "among the most powerful passages in those chapters."[272] Likewise, other courts have noted that the qualitative dimension of this factor asks if the portion taken is "essentially the heart" of the copyrighted expression.[273]

Here, even assuming that Defendants are correct that the amount of Plaintiffs' copyrighted works used is quantitatively small, the Court finds that Plaintiffs have plausibly alleged at this

---

[268] *Id.* at 12, 19, 25.

[269] *Id.*

[270] *Id.*

[271] *Harper & Row Publishers, Inc.*, 471 U.S. at 564.

[272] *Id.*

[273] *Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 557 (citing *NXIVM Corp.*, 364 F.3d at 480).

stage of litigation that the portions used by Defendants were qualitatively significant and the "heart" of Anthony Barré's works such that the third factor could ultimately weigh in favor of Plaintiffs.[274] Plaintiffs have sufficiently alleged that Anthony Barré was well known for his catchphrases, words, and unique voice, including the phrase "back by popular demand" that was used by Defendants.[275] Therefore, the Court finds that Plaintiffs have alleged sufficient facts to show that the third factor of the fair use analysis could ultimately weigh against a finding of fair use, preventing dismissal of Plaintiffs' copyright infringement claim on fair use grounds at this stage of litigation.

### v.    *Fourth fair use factor: the effect on the potential market*

Finally, the fourth fair use factor requires courts to consider "the effect of the use upon the potential market for or value of the copyrighted work."[276] "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied."[277] According to the Supreme Court, the fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market" for the original.[278] The Supreme

---

[274] *Roy Exp. Co. Establishment of Vaduz, Liechtenstein, Black Inc., A. G.*, 503 F. Supp. at 1145 (finding that, even assuming taking less than two minute clips from films between one hour and one hour and thirty minutes in length  was quantitatively insignificant, taking the "best scenes" could be qualitatively significant).

[275] Rec. Doc. 2 at 12–13.

[276] 17 U.S.C. § 107.

[277] *Harper & Row Publishers, Inc.*, 471 U.S. at 566–67.

[278] *Campbell,* 510 U.S. at 590.

Court has opined that the fair use analysis, "when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied."[279]

Defendants argue that Plaintiffs have not plausibly alleged that using ten seconds of audio from free, publicly available YouTube videos "will usurp the market for those works, if any such market exists."[280] Defendants point out that Plaintiffs did not allege that Anthony Barré or Plaintiffs ever sold or licensed any of Plaintiffs' copyrighted works, or that "Formation" harmed the value of Plaintiffs' copyrighted works.[281] In opposition, Plaintiffs assert that there is a "vibrant sampling licensing market" for YouTube videos.[282]

Section 106 of the Copyright Act provides that a copyright holder has the exclusive right to "authorize" certain uses of the copyrighted material.[283] As the Second Circuit has recognized, this includes the right to "demand a royalty for licensing others to use its copyrighted work."[284] Thus, the Second Circuit has advised that the "the impact on potential licensing revenues is a proper subject for consideration in assessing the fourth factor."[285] Likewise, in *United Telephone Company of Missouri v. Johnson Publishing Company, Inc.*, the Eighth Circuit held that even

---

[279] *Harper & Row Publishers, Inc.*, 471 U.S. at 568 (quoting 1 Nimmer § 1.10[D], at 1–87).

[280] Rec. Doc. 50-1 at 13.

[281] *Id.*

[282] Rec. Doc. 72 at 18.

[283] 17 U.S.C. § 106.

[284] *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 929 (2d Cir. 1994).

[285] *Id.* (citing *Campbell*, 510 U.S. at 590; *Harper & Row Publishers, Inc.*, 471 U.S. at 568; *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1377 (2d Cir. 1993); *DC Comics, Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 28 (2d Cir. 1982); *United Telephone Co. of Missouri v. Johnson Publishing Co., Inc.*, 855 F.2d 604, 610 (8th Cir. 1988)). The Second Circuit further noted, however, that "were a court automatically to conclude in every case that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, the fourth fair use factor would always favor the copyright holder." *Id.* at 929 n.17.

though the plaintiff did not offer its phone books for sale, it did have a market for a license to reproduce its customer list.[286] Therefore, the Eighth Circuit determined that "[p]ermitting [the defendant] to use United Telephone's 1985 white pages [without obtaining a license] in order to update its own data base would defeat United Telephone's market in licensing its customer list," and therefore the fourth factor weighed against fair use.[287]

Moreover, as stated *supra*, the Supreme Court has also noted that the fourth factor may weigh against fair use if the challenged use "would adversely affect the *potential* market for the copyrighted work" if it becomes widespread.[288] For example, in *Harper & Row Publishers, Inc.*, the Supreme Court determined that "in a broader perspective, a fair use doctrine that permits extensive prepublication quotations from an unreleased manuscript without the copyright owner's consent poses substantial potential for damage to the marketability of first serialization rights in general."[289] "Isolated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented."[290]

In their amended complaint, Plaintiffs allege that Defendants "unlawfully copied" the YouTube videos without Plaintiffs' permission and "failed to secure a license to copy and exploit" Plaintiffs' works.[291] According to the amended complaint, "[t]he proper licensing of 'Booking the

---

[286] 855 F.2d 604, 610 (8th Cir. 1988).

[287] *Id.*

[288] *Harper & Row Publishers, Inc.*, 471 U.S. at 568 (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. at 451) (emphasis in original); *see also Campbell*, 510 U.S. at 590; *Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 557.

[289] *Harper & Row Publishers, Inc.*, 471 U.S. at 568–69.

[290] *Id.*

[291] Rec. Doc. 2 at 21–22.

49

Hoes from New Wildings' and 'A 27 Piece Huh?' for 'Formation,' 'Lemonade' and the 'Formation World Tour' would not have only generated substantial revenues, but it would have generated international recognition for Anthony Barré's performance works and as contributor to a worldwide hit song."[292]

The Court notes that, in their opposition memorandum, Plaintiffs argue that there is a "vibrant sampling licensing market" and that Defendants "recognized the necessity of obtaining a license" when they obtained a license through an unknown person one week before "Formation" was released.[293] Although Plaintiffs point to this evidence in their memorandum, Plaintiffs did not include these allegations in their amended complaint. Moreover, Plaintiffs do not appear to make any allegations that Defendants' uncompensated appropriation of YouTube videos would adversely affect the market or potential market for Plaintiffs' copyrighted works.[294] It is well established that, in deciding whether to grant or deny a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint."[295] The Court notes that Plaintiffs can request leave to amend their complaint to include such allegations and "conform to the evidence" if

---

[292] *Id.* at 14.

[293] Rec. Doc. 72 at 18.

[294] *Harper & Row Publishers, Inc.*, 471 U.S. at 568 (quoting 1 Nimmer § 1.10[D], at 1–87).

[295] *Carter v. Target Corp.*, 541 F. App'x. 413, 416–17 (5th Cir. 2013); *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *Mabile v. BP, p.l.c.*, No. 11-1783, 2016 WL 5231839, at *16 (E.D. La. Sept. 22, 2016) (Brown, J.).

required.[296] Regardless, no one factor in the four factor fair use test is dispositive,[297] and even assuming that the fourth factor could ultimately weigh in favor of a finding of fair use, Plaintiffs have sufficiently alleged enough facts on the first three factors at this stage to overcome Defendants' fair use defense on this motion to dismiss.

### vi.    Conclusion

Based on the foregoing, the Court finds that Plaintiffs have plausibly alleged a claim for copyright infringement against Defendants. Construing Plaintiffs' complaint liberally and accepting all well-pleaded facts as true, Plaintiffs have also alleged sufficient facts at this stage of litigation to show that the four factor fair use test could ultimately weigh against a finding of fair use. Weighing all the factors discussed *supra* together, the Court concludes at this stage of litigation that "the copyright law's goal of promoting the Progress of Science and useful Arts" would not be better served by allowing Defendants' use of Plaintiffs' copyrighted material without authorization or compensation than by preventing it.[298] Accordingly, the Court denies Defendants' motion to the extent that it seeks to dismiss Plaintiffs' copyright infringement claim on fair use grounds.

---

[296] *See generally* Fed. R. Civ. P. 15(b)(2) ("A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."); *Jones v. Wells Fargo Bank, N.A.*, 858 F.3d 927, 933 (5th Cir. 2017) ("Post-trial amendments conforming the pleadings to the evidence are appropriate under Federal Rule of Civil Procedure 15(b) only if the defendant gives express or implied consent."); *See also Juergens v. Watt*, No. 08-007, 2009 WL 1375976, at *3 (N.D. Miss. May 15, 2009) ("Rule 15(a) of the Federal Rules of Civil Procedure addresses amendments of the pleadings before trial.").

[297] *See Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 549 (quoting *Campbell*, 510 U.S. at 578).

[298] *Campbell*, 510 U.S. at 578; *Bill Graham Archives*, 448 F.3d at 608; *Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d at 549; *see also Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1237–38 (11th Cir. 2014) ("These boundaries must be drawn carefully in order to assure that copyright law serves its intended purpose, which is to promote the creation of new works for the public good by providing authors and other creators with an economic incentive to create.").

### 3. Plaintiffs' Lanham Act Claim

Next, Defendants argue that Plaintiffs have failed to state a claim under the Lanham Act.[299] In particular, Defendants assert that: (1) Plaintiffs cannot assert a claim under the Lanham Act for the use of copyrighted works or performances; and (2) Plaintiffs' Lanham Act claim is barred by the First Amendment pursuant to the *Rogers* test.[300] The Court will consider each of Defendants' arguments in turn.

> #### i. *Whether Plaintiffs can assert a Lanham Act claim for the use of copyrighted works or performances*

Pursuant to 15 U.S.C. § 1125(a), "[a]ny person  who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which:" (A) "is likely to cause confusion, or to cause mistake, *or to deceive as to the affiliation, connection, or association of such person with another person . . .* ," or (B) "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . ." is liable under the Lanham Act.[301] Thus, courts outside the Fifth Circuit have recognized that the Lanham Act provides two general theories of liability: (1) false representations regarding the origin, endorsement, or association of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false endorsement"

---

[299] Rec. Doc. 50-1 at 14.

[300] *Id.* at 14–21.

[301] 15 U.S.C. § 1125(a) (emphasis added).

or "false association"); and (2) false representations in advertising concerning the quality of services or goods ("false advertising").[302]

The Fifth Circuit has interpreted Section 43 of the Lanham Act as providing protection against a "myriad of deceptive commercial practices,"[303] and has recognized that the "false representations in advertising" prong can include false representations as to "the product's endorsement by the plaintiff."[304] However, it appears that the Fifth Circuit has not explicitly addressed whether the use of a well-known or "celebrity" plaintiff's voice, words, or identity in another work can support a "false endorsement" claim under the first prong of the Lanham Act.[305] Nonetheless, the Court notes that the courts of appeal and district courts that have addressed this question appear to have all concluded that such a claim may be alleged under the first prong of Section 43(a) of the Lanham Act.[306] For example, in *Waits v. Frito-Lay, Inc.*, the Ninth Circuit

---

[302] *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1021 (3d Cir. 2008); *Parks v. LaFace Records*, 329 F.3d 437, 445 (6th Cir. 2003); *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 880 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010); *see also 5 McCarthy on Trademarks and Unfair Competition § 27:9 (4th ed.)* (discussing two prongs of section 43(a)); 1 Rights of Publicity and Privacy § 5:20 (2d ed) (same).

[303] *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 494–95 (5th Cir. 2000) (quoting *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1387 (5th Cir. 1996))(discussing false advertising).

[304] *Better Bus. Bureau of Metro. Houston, Inc. v. Med. Directors, Inc.*, 681 F.2d 397, 400 (5th Cir. 1982).

[305] *See generally 5 McCarthy on Trademarks and Unfair Competition § 28:15 (4th ed.)* (noting that a false endorsement claim could be evaluated under a trademark infringement analysis or under the false advertising prong of the Lanham Act but recognizing that "almost all courts have put false endorsement cases within the infringement prong . . .not within the false advertising prong . . . .").

[306] *See, e.g.*, *Facenda*, 542 F.3d at 1007 (Third Circuit recognizing a false endorsement claim for the use of a celebrity's voice in the defendant's video game); *Parks*, 329 F.3d at 445 (Sixth Circuit permitting a false endorsement claim for the use of Rosa Park's name in the title of a song by the band OutKast); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 925 (6th Cir. 2003) ("Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product."); *Waits*, 978 F.2d at 1108 (celebrity suit against snack manufacturer for unauthorized use of his distinctive voice in a commercial); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979) (recognizing claim under Section 43(a) because the uniform worn by star of X-rated movie was confusingly similar to plaintiffs' trademark uniforms, falsely creating impression that plaintiffs "sponsored or

53

recognized that a Lanham Act claim "based on the unauthorized use of a celebrity's identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e.*, a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product."[307] Likewise, courts have consistently recognized false endorsement claims brought by the estate of deceased celebrities who have sufficiently alleged ownership of the celebrity's persona and marks.[308]

In their motion, Defendants assert that "numerous courts" have rejected Plaintiffs' argument that the "brief use" of a copyrighted work "implies an affiliation with the creator or subject of that work."[309] Defendants also contend that performers cannot assert trademark rights in a performance.[310]

---

otherwise approved the use" of the uniform); *Allen v. National Video, Inc.*, 610 F. Supp. 612, 625–26 (S.D.N.Y. 1985) (recognizing a celebrity's false endorsement claim under Section 43(a) because celebrities have a commercial investment in names and faces, and the "underlying purposes of the Lanham Act" are implicated in "cases of misrepresentations regarding the endorsement of goods and services").

[307] *Waits*, 978 F.2d at 1108.

[308] *See Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, No. 10-233, 2011 WL 1327137, at *4–5 (S.D.N.Y. Mar. 31, 2011) (recognizing that "[c]ourts that have considered the issue have found that use of a deceased celebrity's persona can support a false endorsement claim under the Lanham Act"); *see also Facenda*, 542 F.3d at 1018; *Parks*, 329 F.3d at 445; *Branca v. Mann*, No. 11-00584, 2012 WL 3263610, at *5–6 (C.D. Cal. Aug. 10, 2012) (finding that it was not relevant to the false endorsement analysis that Michael Jackson was deceased and that his estate was asserting his rights); *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013 (C.D. Cal. 1998) ("The phrase 'another person' in § 43(a)(1)(A) indicates that Congress selected language broad enough to encompass a claim by a deceased celebrity's Estate or by any celebrity's assignee."); *Fifty–Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148 (D.Nev. 2010) (precluding summary judgment on false endorsement claim brought by owners of Bob Marley's name as to use of Marley's likeness on defendants' t-shirts).

[309] *Id.* at 14–15 (citing *Oliveira v. Frito-Lay*, 251 F.3d 56, 62 (2d Cir. 2001); *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1167–68 (C.D. Cal. 2010)).

[310] *Id.* (citing *Oliveira*, 251 F.3d at 62; *Henley*, 733 F. Supp. 2d at 1168).

In opposition, Plaintiffs argue that they have sufficiently alleged each of the elements required to establish a *prima facie* false endorsement claim under the Lanham Act: (1) Defendants used Anthony Barré's voice and words without permission; (2) Anthony Barré's voice and words are distinctive; (3) Anthony Barré's voice and words were recognized by consumers and the media, which "caused consumer confusion regarding involvement or approval of his estate" in "Formation," the "Lemonade" album, and the "Formation World Tour;" (4) Defendants used Anthony Barré's voice and words for commercial purposes; and (5) Defendants profited from using Anthony Barré's voice and words.[311] Moreover, Plaintiffs assert that courts have recognized that a cause of action under the Lanham Act can be asserted for unauthorized misappropriation of a person's distinctive voice and words.[312]

As other courts have noted, to prove a violation of Section 43(a)(1)(A) of the Lanham Act in a false endorsement case, a plaintiff must show that: (1) "its mark is legally protectable;" (2) "it owns the mark;" and (3) "the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or

---

[311] Rec. Doc. 72 at 18.

[312] *Id.* at 19 (citing *Facenda v. NFL Films, Inc.*, 542 F.3d 1007 (3rd Cir. 2008); *Brown v. Ames*, 201 F.3d 654 (5th Cir. 2000)).

services."[313] Courts have also acknowledged that consumer confusion as to the plaintiff's approval or sponsorship of a product is "the controlling issue" in a false endorsement claim.[314]

Additionally, although the Fifth Circuit has not addressed the proper test for a false endorsement claim under the Lanham Act, the Fifth Circuit has provided guidance on the proper test for courts to consider when determining whether there is a "likelihood of confusion" in other trademark infringement cases under the Lanham Act.[315] In particular, the Fifth Circuit has instructed that courts should consider several non-exhaustive factors when determining whether a likelihood of confusion exists, including: (1) the strength of the plaintiff's mark; (2) the similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers.[316] "The absence or presence

---

[313] *Facenda*, 542 F.3d at 1014 (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)). *See also Waits*, 978 F.2d at 1108 (noting that a false endorsement claim alleges "the misuse of a trademark" that is "likely to confuse consumers as to the plaintiff's sponsorship or approval of the product"); *Stayart v. Yahoo! Inc*., 651 F. Supp. 2d 873, 880–81 (E.D. Wis. 2009) (finding that false endorsement occurs when there is an "unauthorized use of a celebrity's identity" and the "misuse of a trademark" that is likely to cause consumer confusion), *aff'd*, 623 F.3d 436 (7th Cir. 2010). The Court further notes that courts in the Southern District of New York have adopted a similar four factor analysis for false endorsement claims, and require plaintiffs to allege that the defendant: (1) "in commerce;" (2) "made a false or misleading representation of fact;" (3) "in connection with goods or services;" (4) "that is likely to cause consumer confusion as to origin, sponsorship, or approval of the goods or services." *Bruce Lee Enterprises, LLC*, 2011 WL 1327137, at *4; *Burck v. Mars. Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008); *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 268 (S.D. N.Y. 2007).

[314] *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 926 (6th Cir. 2003); *Stayart*, 651 F. Supp. 2d at 880 (noting that the "key issue in a false endorsement case" is consumer confusion).

[315] *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) ("To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion.").

[316] *Id.* (internal citations omitted).

of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors."[317]

In their amended complaint, Plaintiffs assert a claim for false endorsement pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), as Plaintiffs allege that Defendants used Anthony Barré's "actual, distinctive voice, words and performance" in "Formation" in an "unethical, misleading, false, unfair and deceptive" manner.[318] According to Plaintiffs, Defendants allegedly had other performers, such as Big Freedia, imitate Anthony Barré's "voice and cadence" in saying his popular phrases during the "Formation World Tour."[319] Plaintiffs further allege that Defendants' unauthorized actions are likely to result in consumer confusion as to whether Anthony Barré or his Estate were involved in or contributed to "Formation," Plaintiffs granted permission to Defendants to copy Plaintiffs' works, or Plaintiffs endorsed the use of Plaintiffs' works in "Formation."[320] For example, Plaintiffs aver in their amended complaint that Defendants' "unauthorized use of Mr. Barré's actual voice and words" influenced the purchasing decisions of Anthony Barré's fans and consumers of "Bounce Music," with which Anthony Barré was closely associated.[321]

Based on the foregoing, the Court finds at this time that Plaintiffs have alleged sufficient facts to bring a false endorsement claim under the Lanham Act. Defendants have not pointed to

---

[317] *Id.* (quoting *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)) (internal quotation marks omitted).

[318] Rec. Doc. 2 at 29–32.

[319] *Id.* at 18.

[320] *Id.* at 30.

[321] *Id.* at 12, 31.

any authority in the Fifth Circuit, nor has the Court found any, that would foreclose Plaintiffs from alleging a claim under the Lanham Act for false endorsement.

Defendants cite to *Oliveira v. Frito-Lay, Inc.*, where the Second Circuit held that the plaintiff did not have trademark rights in the recording of her "signature performance" in a song uniquely associated with her, *i.e.* "The Girl from Ipanema."[322]  However, contrary to Defendants' assertion, Plaintiffs do not just allege that Defendants violated the Lanham Act by using Plaintiffs' copyrighted works or performances. Rather, Plaintiffs also allege that Defendants misused Anthony Barré's "actual, distinctive voice [and] words" in "Formation" and had others imitate Anthony Barré's "voice and cadence" during the "Formation World Tour" in a manner that created consumer confusion regarding whether Anthony Barré or his Estate were involved with or endorsed Defendants' works.[323] In other words, Plaintiffs have sufficiently alleged a Lanham Act claim based on Defendants' unauthorized use of Anthony Barré's voice, words, and well-known persona in a manner that created consumer confusion.

Thus, the Court concludes that Plaintiffs have sufficiently stated a claim for false endorsement, as Plaintiffs allege that: (1) Anthony Barré was a "very famous" artist whose "distinctive," "raspy voice" was a "unique instrument"  and whose quotes and catchphrases were "well-known" and recognized by consumers; (2) Anthony Barré was a "YouTube sensation with many videos" receiving over two million views and who produced or was featured on two albums and "numerous songs"; (3) Plaintiffs own Anthony Barré's marks and works; (4) Defendants intentionally copied Plaintiffs' well-known and recognizable marks in connection with a good or

---

[322] *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 62 (2d Cir. 2001).

[323] Rec. Doc. 2 at 18, 29–32.

service, as Plaintiffs allege that Defendants earned substantial revenues through Tidal subscriptions, copies of "Formation" and "Lemonade" sold, and concert ticket sales; and (5) it is likely to cause consumer confusion regarding Plaintiffs' sponsorship or approval of Defendants' works, and even influenced the purchasing decisions of Anthony Barré's and consumers of "Bounce Music."[324] Accordingly, the Court finds that Plaintiffs have alleged sufficient facts to state a claim for false endorsement under the Lanham Act.

### ii.      Whether Plaintiffs' Lanham Act claim is barred by the First Amendment

Second, Defendants assert that the First Amendment bars Plaintiffs' false endorsement claim.[325] Defendants argue that the Court should apply the *Rogers* test here.[326]

In *Rogers v. Grimaldi*, the Second Circuit considered whether a famous actress could bring a false endorsement claim under the Lanham Act for the use of her name in the title of a movie.[327] The Second Circuit rejected the plaintiff's false endorsement claim, as it held that the Lanham Act must be construed narrowly to avoid intruding on First Amendment values when titles of works of artistic expression are at issue.[328] The *Rogers* court determined that the proper balance between trademark law and free expression "will normally not support application of the [Lanham] Act unless the title [1] has no artistic relevance to the underlying work whatsoever, or . . . [2] the title explicitly misleads as to the source or the content of the work."[329] Several circuit courts appear to

---

[324] *See Facenda*, 542 F.3d at 1014; *Waits*, 978 F.2d at 1108; *Bruce Lee Enterprises, LLC*, 2011 WL 1327137, at *4.

[325] *Id.*

[326] *Id.* at 18–21.

[327] 875 F.2d 994 (2nd Cir. 1989).

[328] *Id.* at 997.

[329] *Id.* at 999.

have adopted and extended the *Rogers* test beyond claims of false endorsement in titles of artistic works to the use of trademarks in the body of an artistic work.[330]

The Fifth Circuit has applied the *Rogers* test with respect to trademark infringement claims involving titles of works.[331] However, it does not appear that the Fifth Circuit has considered whether the *Rogers* test should be applied in trademark infringement cases involving artistic works generally. Regardless, the Court need not decide this issue here, as even if the *Rogers* test applies in this case, Plaintiffs have alleged sufficient facts to survive the motion to dismiss. As stated *supra*, the *Rogers* test will not preclude a claim under the Lanham Act if either: (1) "the use of the trademark or other identifying material has no artistic relevance to the underlying work;" or (2) "the use of trademark or other identifying material explicitly misleads as to the source or the content of the work."[332]

Here, Plaintiffs have sufficiently alleged that Defendants' use of Anthony Barré's voice and words "explicitly misleads as to the source or content of the work," and thus the *Rogers* test does not bar their Lanham Act claim.[333] For example, Plaintiffs allege in the amended complaint that the "conduct of Defendants has been willful from the inception of the creation of 'Formation' and 'Lemonade.'"[334] Plaintiffs contend that Defendants "intentionally and unlawfully copied the

---

[330] *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) ("[T]here is no principled reason why [the *Rogers* test] ought not also apply to the use of a trademark in the body of the work."); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group*, 886 F.2d 490, 495 (2d Cir. 1989) (applying *Rogers* test to a parody book cover); *see also Facenda*, 542 F.3d at 1015–16 (discussing *Rogers* test).

[331] *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664–65 (5th Cir. 2000) (use of mark "POLO" to title a magazine); *Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999) (use of mark "SUGARBUSTERS" in book title).

[332] *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013) (alterations omitted).

[333] *Id.*; *see also Rogers*, 875 F.2d at 999.

[334] Rec. Doc. 2 at 22–23.

unique and original voice and words of Anthony Barré" to use as the "defining introduction of the song 'Formation'" and to be "the seed from which the entire song grows."[335] Plaintiffs also allege that Defendants "used and exploited" Anthony Barré's voice and words during the live performances by having another person imitate his voice and cadence "to provide a false and unauthorized endorsement of Mrs. Carter and the 'Formation World Tour.'"[336] Plaintiffs further aver that even after receiving notice from Plaintiffs, "Defendants have failed to cease their exploitation of Anthony Barré's voice, words and performance, and have continued their knowing, intentional and willful infringing activity."[337] Moreover, Plaintiffs assert in their amended complaint that "Defendants have deceived consumers by their unauthorized use of Anthony Barré's actual voice, words and performance," as Defendants failed to give credit or compensation in an "unethical, misleading, false, unfair and deceptive" manner.[338]  Accordingly, construing the complaint liberally, the Court finds that Plaintiffs have alleged sufficient facts to show that, even if the *Rogers* test applies, the First Amendment does not bar Plaintiffs' Lanham Act claim. Therefore, the Court denies Defendants' motion to the extent that it requests that Plaintiffs' Lanham Act claim be dismissed.

### 4.    Plaintiffs' Louisiana Unfair Trade Practices Claim

Defendants argue that Plaintiffs' claim under LUTPA fails "for the same reasons as their Lanham Act claim."[339] However, the Court found *supra* that Plaintiffs have sufficiently alleged a

---

[335] *Id.* at 19–20.

[336] *Id.* at 18.

[337] *Id.* at 23.

[338] *Id.* at 29–30.

[339] Rec. Doc. 50-1 at 21.

Lanham Act claim, and Defendants did not offer additional arguments as to why Plaintiffs' claim under LUTPA should be dismissed.

LUTPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practice in the conduct of any trade or commerce."[340] Courts determine what constitutes "unfair" and "deceptive" conduct on a case-by-case basis.[341] Louisiana courts have stated that a practice is unfair "when the practice is unethical, oppressive, unscrupulous, or substantially injurious."[342] Likewise, Louisiana courts have described a trade practice as deceptive when it amounts to "fraud, deceit or misrepresentation."[343]

Here, Plaintiffs allege that Defendants have committed unfair trade practices in violation of LUTPA "by digitally sampling, using and exploiting Anthony Barré's actual voice, reputation and personality, and converting Plaintiffs' intellectual property to their benefit."[344] Plaintiffs further allege that Defendants "have gone beyond copyright infringement and have acted unethically, wrongfully and fraudulently, have made misrepresentations, and have profited from the unique speaking style, gravelly voice, tone, phrasing and manner that defined Mr. Barré."[345]

---

[340] La. Rev. Stat. § 51:1405.

[341] *American Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC,* 136 F. Supp. 2d 599, 604 (E.D. La. 2001); *Core v. Martin,* 543 So.2d 619, 621 (La. App. 2 Cir. 1989).

[342] *See Pinero v. Jackson Hewitt Tax Serv. Inc*., 594 F. Supp. 2d 710, 720–21 (E.D. La. 2009) (Vance, J.) (citing *Jefferson v. Chevron U.S.A. Inc.,* 713 So.2d 785, 792 (La. App. 4 Cir. 1998)).

[343] *See id.* at 721 (citing *Jefferson,* 713 So.2d at 793); *see also Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 404 (5th Cir. 2000) ("To recover under LUTPA, a plaintiff must prove fraud, misrepresentation, or other unethical conduct.").

[344] Rec. Doc. 2 at 32.

[345] *Id.*

Accordingly, the Court finds that Plaintiffs have stated a claim under LUTPA, and hereby denies Defendants' motion to dismiss Plaintiffs' LUTPA claim.

> **5.      Unjust Enrichment Claim**

Defendants assert that Plaintiffs' unjust enrichment claim fails because (1) it is preempted by the Copyright Act, and (2) it is only available when there is no other remedy available.[346] In response, Plaintiffs argue that they only bring an unjust enrichment cause of action in the alternative, and Plaintiffs point to other courts that allowed an unjust enrichment claim to remain in case the jury determined that the plaintiff could not bring a Copyright Act claim.[347]

The Louisiana Civil Code clearly states that unjust enrichment "shall not be available if the law provides another remedy for the impoverishment [of a plaintiff] or declares a contrary rule."[348] The Supreme Court of Louisiana has held that unjust enrichment is a remedy "subsidiary in nature," applicable only "to fill a gap in the law where no express remedy is provided."[349] As the Fifth Circuit held in *Ferrara Fire Apparatus, Inc. v. JLG Industry, Inc.*, "[t]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful."[350] Likewise, this Court has previously held that when a court finds that there are other remedies at law available, an unjust enrichment claim is precluded by the plain words of Louisiana

---

[346] Rec. Doc. 50-1 at 23.

[347] Rec. Doc. 72 at 21.

[348] La. Rev. Stat. 2298.

[349] *Walters v. MedSouth Record Mgmt.*, 38 So. 3d 243, 244 (La. 2010) (internal citations and quotation marks omitted).

[350] 581 F. App'x 440, 443–44 (5th Cir. 2014). *See also Cenac Inland, LLC v. River Valley Shipyards, LLC*, No. CIV.A. 12-2260, 2013 WL 1786641, at *4 (E.D. La. Apr. 25, 2013) (Brown, J.) (holding that, where a court finds that the plaintiff has stated a claim for the conduct alleged, the Court "must dismiss Plaintiff's alternative claim for unjust enrichment, irrespective of whether Plaintiff is ultimately able to successfully pursue its claim.").

substantive law, regardless of whether it is was pled in the alternative under federal procedural law.[351] "In Louisiana, by law, an unjust enrichment claim is a 'subsidiary' claim, not an alternative claim."[352] Importantly, it is the availability of another remedy at law that determines whether an unjust enrichment claim is barred, and not the outcome of Plaintiffs' other causes of action.[353]

Here, it appears that Plaintiffs' unjust enrichment claim is based on the same factual premises and alleged wrong as their LUTPA, Copyright Act, and Lanham Act claims.[354] For example, Plaintiffs allege that Defendants "were unjustly enriched by their unauthorized use of Anthony Barré's actual voice" and that Defendants failed to contract with Plaintiffs to use their works.[355] Moreover, as stated *supra*, Plaintiffs have sufficiently stated claims under the Copyright Act, the Lanham Act, and LUTPA, such that those remedies are available to Plaintiffs. Accordingly, regardless of whether Plaintiffs have brought an unjust enrichment action in the alternative, because Plaintiffs have other remedies available at law, Louisiana state law precludes Plaintiffs from bringing an unjust enrichment claim. Therefore, the Court grants Defendants' motion to the extent that it seeks to dismiss Plaintiffs' unjust enrichment claim.

---

[351] *JP Mack Indus. LLC v. Mosaic Fertilizer, LLC,* 970 F. Supp. 2d 516, 521 (E.D. La. 2013) (Brown, J.).

[352] *Id.*

[353] *See also Mabile v. BP, p.l.c.*, No. 11-1783, 2016 WL 5231839, at *22 (E.D. La. Sept. 22, 2016) (Brown, J.); *Patterson v. Dean Morris, L.L.P.*, No. 08–5014, 2011 WL 1743617 (E.D. La. May 6, 2011) (Duval, J.)(holding that "[t]he availability of an alternative remedy bars [the plaintiff's] claim for unjust enrichment and entitles [the defendant] to summary judgment on her claim of unjust enrichment" and noting that the fact that the plaintiff failed to prevail on other remedies does not negate the fact that such remedies were available to the plaintiff).

[354] *See* Rec. Doc. 2 at 33.

[355] Rec. Doc. 2 at 33.

### 6.    Angel Barré's Standing

Finally, Defendants argue that Angel Barré lacks standing to assert a copyright infringement claim, as she allegedly does not own the intellectual property rights at issue.[356] According to Defendants, "[w]hile there are two named plaintiffs in this case, the [complaint] alleges that only one of them owns any rights in the alleged copyright and trademarks at issue," *i.e.* the Estate of Anthony Barré.[357] However, Plaintiffs, *i.e.* the Estate of Anthony Barré and Angel Barré, also allege in their complaint that "*Plaintiffs* own a protectable copyright interest" in Anthony Barré's YouTube videos.[358] Moreover, Plaintiffs allege that Angel Barré is Anthony Barré's "sole heir," and that she was judicially appointed as the Independent Administrator of the Estate of Anthony Barré.[359] In the amended complaint, Plaintiffs also provide links to "Angel Barré's videos," *i.e.* the YouTube videos at issue in this litigation.[360] Moreover, Plaintiffs attach two Certificates of Registration for copyrights for Anthony Barré's two YouTube videos, which both state that the copyright claimant is "Angel Barré."[361] Accordingly, the Court finds that Plaintiffs' allegations are sufficient to demonstrate that Angel Barré has standing to proceed in this litigation. Therefore, the Court denies Defendants' motion to the extent that it requests dismissal of Angel Barré for lack of standing.

---

[356] Rec. Doc. 50-1 at 23.

[357] *Id.* at 24.

[358] Rec. Doc. 2 at 3.

[359] *Id.*

[360] *Id.* at 2.

[361] Rec. Docs. 1-1, 1-2.

## IV. Conclusion

Based on the foregoing, the Court finds that Plaintiffs have alleged sufficient facts to state a claim for copyright infringement under the Copyright Act and, under the Rule 12(b)(6) motion to dismiss standard, to overcome Defendants' fair use defense at this stage of litigation. The Court also finds that Plaintiffs have alleged sufficient facts to state a claim for false endorsement under the Lanham Act and a violation of LUTPA. Therefore, the Court denies Defendants' motion to dismiss with respect to those claims. The Court further finds that Plaintiffs have failed to state a claim for unjust enrichment, as there are other remedies available at law to Plaintiffs such that Louisiana law precludes an unjust enrichment claim here. Therefore, the Court grants Defendants' motion to dismiss with respect to Plaintiffs' unjust enrichment claim. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Dismiss for Failure to State a Claim"[362] is **GRANTED** to the extent that it seeks dismissal of Plaintiffs' claim for unjust enrichment and **DENIED** to the extent that it seeks dismissal of Plaintiffs' copyright infringement claim on fair use grounds, Plaintiffs' false endorsement claim under the Lanham Act, and Plaintiffs' LUTPA claim.

**NEW ORLEANS, LOUISIANA,** this 25th day of July, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[362] Rec. Doc. 50.